[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 593.]

THE STATE EX REL. MTD PRODUCTS, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE, ET AL.

[Cite as *State ex rel. MTD Products, Inc. v. Indus. Comm.*, 1996-Ohio-173.]

*Workers' compensation—Attending physician issues contradictory reports regarding claimant's eligibility to receive temporary total disability compensation--Industrial Commission does not abuse its discretion in terminating benefits as of the date of a hearing before a district hearing officer rather than the date the attending physician first produced a letter suggesting that claimant had reached maximum medical improvement when there is "some evidence" supporting the commission's decision.*

(No. 94-1909—Submitted July 24, 1996—Decided October 2, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93AP-1002.

————————————

{¶ 1} Appellant, MTD Products, Inc. ("MTD"), a self-insured employer, seeks an order compelling appellee Industrial Commission of Ohio to vacate an award of temporary total disability compensation ("TTD") in favor of appellee Branko Sarac, for the period between January 22, 1991, when his doctor suggested his allowed condition had become permanent, and March 13, 1992, the hearing date on which the commission terminated Sarac's TTD. The court of appeals rejected MTD's request. For the reasons that follow, we affirm that decision.

{¶ 2} Sarac was injured while working as an assembler for MTD in November 1985. The Industrial Commission allowed his claim for "low back strain, strain right leg."

{¶ 3} Sarac received TTD for a short period after his injury and returned to work. Over the next several years, however, Sarac's back trouble persisted, and he

was ultimately awarded compensation based on a permanent partial impairment of twenty percent. He was also awarded TTD for at least one period during 1988.

**{¶ 4}** In 1990, a district hearing officer ("DHO") for the commission again awarded Sarac periods of TTD and further ordered TTD payments to continue upon submission of "appropriate" medical evidence substantiating the previously allowed condition.

**{¶ 5}** Pursuant to the DHO's order, Sarac's physician, Dr. Dusan Naunovich, continued to submit supplemental reports, or C-84 forms, to continue Sarac's TTD.

**{¶ 6}** In a letter dated January 22, 1991, Dr. Naunovich suggested to representatives of MTD that Sarac's condition had become permanent, stating: "The patient refused surgery and due to this I think he reached a level of maximum medical improvement ["MMI"] at this time." Notwithstanding this statement, Dr. Naunovich continued to document Sarac's back conditions for TTD with C-84 forms. Specifically, in C-84 forms dated March 13, 1991, June 20, 1991, August 5, 1991, November 7, 1991, and April 13, 1992, Dr. Naunovich estimated dates on which Sarac would be "substantially able to return to his former position of employment."

**{¶ 7}** Dr. Naunovich's letter prompted MTD to move, in February 1991, for termination of Sarac's TTD. As support for its motion, MTD submitted Dr. Naunovich's letter and the February 1, 1991 report of another physician, Dr. Douglas E. Busby, who agreed that Sarac had "reached MMI." In December 1991, the commission's specialist, Dr. Sheldon Kaffen, examined Sarac. Dr. Kaffen determined that Sarac's allowed low back condition, along with two other allowed conditions, prevented his return to work at MTD and his impairment had become permanent.

**{¶ 8}** On March 13, 1992, another DHO terminated Sarac's TTD, effective the date of that hearing, "[b]ased on reports of Drs. Busby and Kaffen" opining that

he had reached MMI. The DHO's order was affirmed by the regional board of review and commission staff hearing officers.

{¶ 9} MTD sought a writ of mandamus in the Franklin County Court of Appeals, arguing that the commission abused its discretion by terminating TTD as of the DHO hearing on March 13, 1992, and not as of January 22, 1991, the date Dr. Naunovich suggested Sarac's MMI. A referee found that the commission did not abuse its discretion in continuing TTD because Dr. Naunovich had certified Sarac's TTD eligibility through March 13, 1992. The court of appeals adopted these recommended findings and denied the writ.

{¶ 10} The cause is now before this court upon an appeal as of right.

_____

*David R. Cook,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Gerald H. Waterman,* Assistant Attorney General, for appellee.

_____

**COOK, J.**

{¶ 11} In this appeal we must determine whether there is "some evidence" supporting the date of the DHO hearing, March 13, 1992, as the effective date of termination for Sarac's TTD benefits or whether the only evidence before the Industrial Commission mandated that TTD benefits be terminated as of January 22, 1991, the date that Sarac's attending physician first produced a letter suggesting that Sarac had reached MMI. Because we find that there was "some evidence" before the commission supporting its conclusion, we affirm.

{¶ 12} In *AT&T Technologies, Inc. v. Indus. Comm.* (1993), 68 Ohio St.3d 55, 623 N.E.2d 63, and *State ex rel. McGinnis v. Indus. Comm.* (1991), 58 Ohio St.3d 81, 568 N.E.2d 665, this court construed former R.C. 4123.56 as imposing not only the duty of a self-insured employer to make TTD payments to a claimant once a claim has been allowed, but also claimant's entitlement to receive such

payments as compensation. In *McGinnis* we held that former R.C. 4123.56 entitled a claimant to receive TTD up until the date of a DHO hearing despite the hearing officer having found that the claimant's allowed conditions had not prevented him from returning to his old job for well over a year before the date of the hearing. This court held that, in light of McGinnis's attending physician's continued certification of TTD, the DHO was powerless to retroactively terminate the claimant's TTD. Likewise, in *AT&T*, we held that pursuant to former R.C. 4123.56, where an attending physician's reports support TTD, a self-insured employer who successfully challenges the attending physician's reports is not entitled to a termination of TTD retroactive to the date MMI was diagnosed by the nonattending physician.

{¶ 13} The pertinent portion of former R.C. 4123.56 reads:

"In the case of an employer who has elected to pay compensation direct, payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer. Payments shall continue pending the determination of the matter, however payment shall not be made for such period when any employee has returned to work or when an employee's treating physician has made a written statement that the employee is capable of returning to his former position of employment." (138 Ohio Laws, Part I, 1984.)

{¶ 14} Because payments are for a "duration based upon the medical reports of the attending physician," we have held that a self-insured employer's obligation to continue TTD payments ceases upon receipt of the attending physician's opinion that the allowed condition has become permanent. *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095. However, where an attending physician issues contradictory reports regarding the claimant's eligibility to receive TTD, the attending physician's statement that the allowed condition has become

permanent does not necessarily terminate a claimant's entitlement to TTD as of the date of that statement. See *Jeep* at 67, 577 N.E.2d at 1098. Instead, under former R.C. 4123.56, an issue of fact is created that must be resolved at the administrative level.

{¶ 15} Here, Sarac's attending physician issued contradictory reports—the January 22, 1991 MMI letter and the C-84s dated after January 22, 1991. The commission implicitly discredited the attending physician's MMI letter and credited the C-84s. The C-84s supplied the commission with "some evidence" of the attending physician's continued certification of Sarac's eligibility to receive TTD. Accordingly, the Industrial Commission did not abuse its discretion in establishing the date of the 1992 DHO hearing as the effective date for termination of TTD.

{¶ 16} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, PFEIFER and STRATTON, JJ., concur.

F.E. SWEENEY, J., dissents and would reverse the judgment of the court of appeals.

_____