[This opinion has been published in *Ohio Official Reports* at 82 Ohio St.3d 516.]

THE STATE EX REL. RUSSELL *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

[Cite as *State ex rel. Russell v. Indus. Comm.*, 1998-Ohio-212.]

*Workers' compensation—Appropriate date on which to terminate disputed temporary total disability compensation on the basis of maximum medical improvement—Industrial Commission may not declare an overpayment for payments received by the claimant, when.*

The appropriate date on which to terminate disputed temporary total disability compensation on the basis of maximum medical improvement is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date.

(No. 96-61—Submitted March 24, 1998—Decided August 5, 1998.)

IN MANDAMUS and PROHIBITION.

———————————

{¶ 1} On August 13, 1992, relator-claimant, Herbert G. Russell, received an injury in the course of, and arising out of, his employment as a firefighter/paramedic with respondents, Coventry Township Trustees. Claimant's workers' compensation claim was allowed for "lumbar strain," and he received temporary total disability ("TTD") compensation until May 8, 1994, when compensation was terminated upon a finding of permanence.

{¶ 2} On October 24, 1994, a district hearing officer allowed the claim for the condition of "dysthymia, DSM III secondary type," and TTD compensation was resumed. Compensation continued to be paid based on the reports of claimant's treating physician, James L. Helmuth, Ph.D., who opined that claimant had not reached maximum medical improvement ("MMI") and remained temporarily and totally disabled.

**{¶ 3}** At the behest of respondent, Ohio Bureau of Workers' Compensation, claimant was examined by a psychologist, Alan D. Gilbertson, Ph.D. On March 23, 1995, Dr. Gilbertson issued a report opining that claimant had reached MMI. Based on this report, the bureau filed a request for formal hearing with respondent, Industrial Commission of Ohio, to terminate claimant's TTD compensation.

**{¶ 4}** On July 24, 1995, a district hearing officer heard the matter and ordered as follows:

"The District Hearing Officer finds, based on [the] report of Dr. Gilbertson, that claimant reached maximum medical improvement as of 3-23-95, the date on which Dr. Gilbertson performed a medical examination or medical review of the claimant.

"The District Hearing Officer further finds that the claimant's temporary total disability compensation shall be and is hereby terminated as of 3-23-95, the date of the medical examination or medical review.

"The District Hearing Officer defers ruling on the issue of overpayment and recoupment under 4123.511(J) O.R.C. pending the final disposition of the Motion to Show Cause in State, ex rel. Crabtree v. Bureau of Workers' Compensation.

"The determination of termination of temporary total disability compensation by reason of maximum medical improvement is a final order. However, the issue of overpayment and recoupability of overpayment is not a final order."

**{¶ 5}** This order was administratively affirmed.

**{¶ 6}** In identical orders dated December 18, 1995 and February 19, 1996, an overpayment was declared. These orders read:

"Pursuant to * * * State of Ohio ex rel. Roger D. Crabtree, Relator v. Ohio Bureau of Workers' Compensation * * * and pursuant to Resolution No. R95-1-14 * * * which * * * reinstated in toto Resolution No. R95-1-02, this Hearing Officer finds an overpayment of temporary total disability compensation in this case.

" * * * [A]n overpayment is declared from the date of termination of temporary total disability compensation as established previously by a Hearing Officer, to the date on which the Bureau of Workers' Compensation or self-insured employer paid temporary total disability compensation. Further, this overpayment is to be recouped by the Bureau of Workers' Compensation or the self-insured employer pursuant to the provisions of Sections 4123.511(J) of the Ohio Revised Code as set forth in Resolution No. R95-1-02 and Policy Statement and Guideline Memorandum No. C.8 of the Hearing Officer Manual.

"This order is a final administrative order, and is therefore not appealable or subject to reconsideration."

{¶ 7} This cause is now before the court as an original action in mandamus and prohibition.

_____

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, for relator.

*Maureen O'Connor,* Summit County Prosecuting Attorney, and *James W. Armstrong,* Assistant Prosecuting Attorney, for respondents Coventry Township Trustees.

*Betty D. Montgomery*, Attorney General, *Dennis L. Hufstader* and *William A. Thorman III,* Assistant Attorneys General, for respondents Industrial Commission and Bureau of Workers' Compensation.

*Scott, Scriven & Wahoff, William J. Wahoff, Richard Goldberg* and *Timothy E. Cowans*, urging denial of the writs for *amicus curiae*, Ohio Council of Retail Merchants.

*Bricker & Eckler, Charles D. Smith* and *Elizabeth A. Preston*, urging denial of the writs for *amici curiae*, Ohio Chapter of the National Federation of Independent Business and Ohio Farm Bureau Federation.

*Vorys, Sater, Seymour & Pease, Robert A. Minor* and *Robin R. Obetz*, urging denial of the writs for *amici curiae*, Ohio Manufacturers' Association and Ohio Self-Insurers' Association.

*Millisor & Nobil* and *Preston J. Garvin*, urging denial of the writs for *amicus curiae*, Ohio Chamber of Commerce.

*Squire, Sanders & Dempsey, Steven M. Loewengart* and *Michael Soto*, urging denial of the writs for *amicus curiae*, Council of Smaller Enterprises.

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy*, urging issuance of the writs for *amicus curiae*, Ohio AFL-CIO.

*Gallon & Takacs Co., L.P.A.*, and *Theodore A. Bowman*, urging issuance of the writs for *amicus curiae*, Ohio Academy of Trial Lawyers.

———————————

**ALICE ROBIE RESNICK, J.**

{¶ 8} At issue is Resolution R95-1-02, adopted by the commission on February 9, 1995 and applied in this case, which directs commission hearing officers to terminate TTD compensation as of the date MMI was diagnosed by the nonattending physician, and to declare an overpayment for any compensation paid subsequent to that date. For the reasons that follow, this resolution cannot stand. We hold that the appropriate date on which to terminate disputed TTD compensation on the basis of maximum medical improvement is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date.

{¶ 9} This court has unwaveringly held (1) that continuing TTD compensation may not be terminated prior to a hearing before a commission hearing officer so long as claimant's attending physician continues to certify TTD, (2) that the hearing officer may not terminate the claimant's TTD retroactive to a date prior to the date of the hearing, (3) that claimant is entitled to all compensation paid to the date of the hearing, and (4) that any eventual discounting of the attending

physician's reports certifying TTD does not transform those payments into a recoupable overpayment. *State ex rel. MTD Products, Inc. v. Indus. Comm.* (1996), 76 Ohio St.3d 593, 669 N.E.2d 846; *State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 504, 644 N.E.2d 361; *AT & T Technologies, Inc. v. Indus. Comm.* (1993), 68 Ohio St.3d 55, 623 N.E.2d 63; *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095; *State ex rel. McGinnis v. Indus. Comm.* (1991), 58 Ohio St.3d 81, 568 N.E.2d 665; *State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler* (1990), 55 Ohio St.3d 109, 564 N.E.2d 76.

{¶ 10} In its effort to defend Resolution R95-1-02, the commission attempts to distinguish the above-cited cases, most notably *AT & T* and *McGinnis*. The commission argues that our decision in *AT & T* did not address the issue of the termination date for TTD benefits due to MMI, and does not preclude it from establishing the termination date as the date MMI was diagnosed by the nonattending physician. We cannot fathom how the commission could reach such a conclusion.

{¶ 11} In *MTD Products*, we specifically explained that "in *AT & T*, we held that pursuant to former R.C. 4123.56, where an attending physician's reports support TTD, a self-insured employer who successfully challenges the attending physician's reports is not entitled to a termination of TTD retroactive to the date MMI was diagnosed by the nonattending physician." *Id.*, 76 Ohio St.3d at 595-596, 669 N.E.2d at 848. Indeed, even the dissent in *AT & T* recognized that "[t]he majority holds that when the attending physician's report supports compensation for temporary total disability * * *, the termination date for TTD benefits paid by self-insured employers is the date on which the district hearing officer orders the

payments terminated." *Id.*, 68 Ohio St.3d at 58, 623 N.E.2d at 65 (Wright, J., dissenting).[1]

{¶ 12} The commission also argues that although this court in *McGinnis* "did examine the issue of the effect of denying an award before the hearing date, * * * *McGinnis* [was decided under] former R.C. 4123.56, which did not contain the provisions in current R.C. 4123.56 requiring denial of temporary total compensation for the period when the claimant reaches maximum medical improvement * * * [and] prior to the enactment of Ohio Adm.Code 4121-3-32 and R.C. 4123.511(J) which specifically provide for withholding against future awards." Thus, the commission concludes, "unlike the period governed by *McGinnis*, the Industrial Commission and the courts now have direct and specific statutory and administrative code authority which *requires* the Industrial Commission to declare an overpayment, and which requires the Bureau of Workers' Compensation or the self-insured employer to withhold the overpayment in the manner provided by the statute." (Emphasis *sic*.)

{¶ 13} In deference to the commission, we will construe this argument as not being limited to *McGinnis*, since even without *McGinnis*, *AT & T* and *MTD Products* would still invalidate Resolution R95-1-02. However, of the six cases cited above, all except *Crabtree* (which the commission would distinguish) were decided under former R.C. 4123.56 (138 Ohio Laws, Part I, 1893-1894) and without regard to Ohio Adm.Code 4121-3-32(B)(2)(d) or R.C. 4123.511(J). If the

---

1. In *AT & T*, as with all our previous cases on this issue except for *Crabtree*, the claimant was an employee of a self-insured employer. The claimant in the present case is a State Fund employee. The commission does not argue that self-insured cases in this area do not apply to State Fund claims, and indeed relies on that portion of R.C. 4123.56(A) that begins, "In the case of a self-insuring employer." We agree that the provisions of R.C. 4123.56 governing the termination of TTD payments apply to the bureau in State Fund claims as well as to self-insuring employers. In *Crabtree*, we analyzed the State Fund claimant's entitlement to a termination hearing, and to reinstatement of his TTD compensation while determination is pending, under the self-insuring-employer provision of R.C. 4123.56(A). As pointed out by Justice Douglas, such uniformity of application is required by R.C. 4121.31(C). *Id.*, 71 Ohio St.3d at 510-511, 644 N.E.2d at 367 (Douglas, J., concurring).

commission is correct in its assertion that these provisions changed the law in this area, then the issue now before us would have to be reevaluated in light of the change.

**{¶ 14}** The problem with the commission's argument, however, is that it assumes too much. No relevant change in the law has been effected by these provisions that would call into question the continuing vitality of our previous decisions. While the August 22, 1986 amendments to former R.C. 4123.56 added the language that payment shall not be made for the period "when the employee has reached the maximum medical improvement," this language added nothing that we had not already construed to be part of former R.C. 4123.56. 141 Ohio Laws, Part I, 766.

**{¶ 15}** As early as 1982, we construed former R.C. 4123.56 to require that TTD compensation terminate when the claimant's temporary disability has become permanent. *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586. Our decision in *AT & T* specifically adhered to this construction of former R.C. 4123.56, and, in *Jeep Corp.*, 62 Ohio St.3d at 66, 577 N.E.2d at 1097, we rejected the *commission's* argument to the contrary. The 1986 amendments did not *change* our construction of R.C. 4123.56, but *codified* it. Thus, there is no basis on which to decide the issue differently today.

**{¶ 16}** R.C. 4123.511(J) was enacted as part of Am.Sub.H.B. No. 107, effective October 20, 1993. 145 Ohio Laws, Part II, 2990, 3152-3153. As the commission correctly states, R.C. 4123.511(J) supersedes Ohio Adm.Code 4121-3-32(B)(2)(d). However, R.C. 4123.511(J) simply provides for withholding future payments to recoup an overpayment when a claimant is found to have received compensation to which he was not entitled. The question of claimant's entitlement to receive ongoing TTD compensation until a hearing officer rules otherwise is governed by R.C. 4123.56, not 4123.511(J). To say that under R.C. 4123.511(J) a claimant must repay compensation to which he or she was not entitled begs the

question of whether claimant was entitled in the first place to receive such compensation.

{¶ 17} In this case, claimant was receiving ongoing TTD compensation pursuant to a prior order, and continued to submit proof of TTD from his attending physician. This fulfills all conditions precedent to the payment of compensation and establishes claimant's entitlement to all payments at the time they were received, despite the existence of contrary evidence. *MTD Products*, 76 Ohio St.3d at 595, 669 N.E.2d at 848; *Crabtree*, 71 Ohio St.3d at 508, 644 N.E.2d at 365; *AT & T*, 68 Ohio St.3d at 57-58, 623 N.E.2d at 65; *Jeep Corp.*, 62 Ohio St.3d at 66, 577 N.E.2d at 1097; *McGinnis*, 58 Ohio St.3d at 83, 568 N.E.2d at 667. A termination order does not negate the previous order pursuant to which compensation has been paid; it does not, and could not, change the eligibility requirements for the payment of compensation. Simply put, this is not a situation to which R.C. 4123.511(J) applies.

{¶ 18} The dissent argues that "[t]he language of R.C. 4123.56(A) conflicts with the majority's position," placing emphasis on the phrase "however[,] payment shall not be made for the period in which any employee has * * * reached the maximum medical improvement." The dissent is confused.

{¶ 19} This language relates to the issue of unilateral termination and applies "only when there is no dispute as to whether the employee has reached maximum medical improvement." *Crabtree*, 71 Ohio St.3d at 509-510, 644 N.E.2d at 366. Otherwise, "payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer * * *." R.C. 4123.56(A). As Justice Cook pointed out in *MTD Products*, 76 Ohio St.3d at 595-596, 669 N.E.2d at 848, the employer who successfully challenges the attending physician's report is not entitled to a

termination of TTD compensation retroactive to the date MMI was diagnosed by the nonattending physician.

{¶ 20} The dissent also argues that R.C. 4123.511(J) "demonstrates a legislative expectation that compensation will be repaid by claimants who do not meet the eligibility criteria. [In]eligibility is the key to the right to recoupment. The payment of continued benefits pending a hearing to determine eligibility does not equate with eligibility." Again the dissent is confused.

{¶ 21} The claimant is entitled to continuing TTD payments until they are terminated at hearing precisely because he has fulfilled the eligibility requirements. "[T]he bureau *must* pay TTD compensation if all conditions precedent are met. Thus, if the commission order makes payment contingent on proof of disability and the claimant tenders such evidence, the bureau must continue compensation regardless of the existence of contrary evidence." (Emphasis *sic*.) *Crabtree*, 71 Ohio St.3d at 508, 644 N.E.2d at 365. In this case, TTD compensation was previously awarded and the claimant continued to offer proof of TTD from his attending physician. This fulfills all the "eligibility criteria" for the payment of compensation and establishes claimant's entitlement to all payments received.

{¶ 22} However, the dissent argues that although the claimant may have been "eligible to *receive payments*" made after the date of the nonattending physician's report, R.C. 4123.511(J) should apply to allow a determination that the claimant is "*ineligible to retain those payments*." (Emphasis *sic*.) Yet the dissent does not question our decisions in *AT & T* and *MTD Products* prohibiting the termination of TTD retroactive to the date of the nonattending physician's report. In actuality, therefore, the dissent's argument translates to the absurd proposition that the district hearing officer may declare a recoupable overpayment from the date of the nonattending physician's report even though he or she is prohibited from terminating compensation retroactive to that date.

**{¶ 23}** The dissent, therefore, lacks statutory support for its position. In addition, the dissent has been unable to cite even the slightest dictum from any case to support its view. Instead, the dissent incredibly argues that "[t]he majority relies on a single case — *State ex rel. McGinnis * * *,* a case which we ought to reconsider because the cases it relies upon do not justify the decision."

**{¶ 24}** According to the dissent, the court in *McGinnis* "relied on the standard articulated in *State ex rel. Martin v. Connor* (1984), 9 Ohio St.3d 213, 9 OBR 523, 459 N.E.2d 889." In *Martin*, the court compared *Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 135 N.E. 669, with *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d 149, and essentially concluded that payments made under a mistake of fact cannot be recouped where the parties had a good faith belief that claimant was entitled to the payments at the time they were made. *Id.*, 9 Ohio St.3d at 214, 9 OBR at 525, 459 N.E.2d at 891. The dissent argues that because *Dell* was not a recoupment case, *Martin* was wrongly decided, and that "in applying *Martin*, *McGinnis* only perpetuated an earlier standard that is legally unsound and fiscally untenable."

**{¶ 25}** In the first place, it is pure fantasy to suggest that we have relied "on a single case—*State ex rel. McGinnis*." Indeed, as we stated above, "[i]n deference to the commission, we will construe this argument as not being limited to *McGinnis*, since even without *McGinnis*, *AT & T* and *MTD Products* would still invalidate Resolution R95-1-02." Thus, even if the dissent's attack on *McGinnis* had merit, it would not produce the result the dissent seeks.

**{¶ 26}** In any event, the dissent's argument, which has not been raised by the commission, the bureau, the claimant's employer, or any of their supporting *amici*, is entirely without merit. In *McGinnis*, claimant was receiving continuing TTD compensation based on the reports of his attending physician, who certified his inability to return to his former position of employment. Claimant's employer filed a motion to terminate, which was granted on January 18, 1984. In the order,

the commission's hearing officer had terminated TTD compensation retroactive to September 30, 1982. Subsequently, the hearing officer declared an overpayment from September 30, 1982 to February 7, 1984 and permitted the employer to offset the payments made against any future compensation awarded to claimant. The court of appeals granted a writ of mandamus in favor of claimant, after finding that no overpayment had occurred.

{¶ 27} In arguing the merits of its recoupment request, the employer in *McGinnis* relied heavily on *State ex rel. DeLong v. Indus. Comm.* (1988), 40 Ohio St.3d 345, 533 N.E.2d 729. In *DeLong*, an employer appealed a district hearing officer's award of TTD compensation. Pursuant to former R.C. 4123.515, that appeal stayed the payment of compensation pending a regional board hearing, but claimant's employer mistakenly paid compensation during the pendency of that hearing. We upheld the employer's right to recoupment in *DeLong* because, in light of R.C. 4123.515's stay on payment, it was unlikely that claimant had had a good faith belief that he was entitled to the funds at the time payments were made.

{¶ 28} In *McGinnis*, we rejected the employer's recoupment request, finding its reliance on *DeLong* to be misplaced. We held that pursuant to former R.C. 4123.56, "so long as claimant's physician did not release him to return to his former position, appellant was statutorily required to pay temporary total disability compensation until a commission hearing officer held otherwise. This eventually occurred on January 18, 1984. In view of appellant's duty, claimant was entitled to the funds. *DeLong* and *Weimer* are thus distinguishable." *Id*., 58 Ohio St.3d at 83, 568 N.E.2d at 667.

{¶ 29} However, in distinguishing *DeLong* and *Weimer*, we did not rely on the standard articulated in *Martin*. *Martin* is nowhere cited in the majority opinion in *McGinnis*, and at no time did we attempt to justify McGinnis's entitlement to TTD compensation on the basis of such a standard. We did not make a determination that McGinnis's compensation payments were made under a mistake

of fact or inquire into the parties' belief at the time payments were made. To the contrary, the payments made to McGinnis were statutorily required and not made under a mistake of fact at all. *McGinnis* is simply not a mistake-of-fact case, and this is what distinguishes it from *DeLong*, *Weimer*, or *Martin*. Thus, even if *Martin* is legally infirm, such an infirmity would not affect the viability of *McGinnis*.

{¶ 30} Since, like *McGinnis*, the instant case has nothing whatsoever to do with the recoupability of payments made under a mistake of fact, there is no reason to revisit *Martin*. However, our refusal to defend *Martin* and its progeny is based solely on the fact that those cases are irrelevant under the present circumstances, and should in no way be construed as casting doubt on *Martin's* continued viability.

{¶ 31} Since Resolution R95-1-02 was passed without statutory authority, and since claimant has a clear legal right to those funds that the commission has declared an overpayment, the writs of mandamus and prohibition are hereby granted.

*Writs granted.*

DOUGLAS, F.E. SWEENEY and PFEIFER, JJ., concur.

LUNDBERG STRATTON, J., concurs separately.

MOYER, C.J., and COOK, J., dissent.

———————————

**LUNDBERG STRATTON, J., concurring.**

{¶ 32} There are four situations where temporary total disability compensation is terminated. It is not payable when the claimant (1) has returned to work, (2) is medically able to return to the former position of employment, (3) has declined suitable alternate employment, or (4) has attained permanency of the disability. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.* (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586; *Vulcan Materials Co. v. Indus. Comm.* (1986), 25 Ohio St.3d 31, 25 OBR 26, 494 N.E.2d 1125. Because the majority's opinion narrowly addresses only those situations where there is *conflicting* medical

evidence concerning the claimant's maximum medical improvement, I agree that, so long as the claimant's attending physician continues to certify the claimant as temporarily and totally disabled, TTD compensation should continue until a termination order is rendered.

{¶ 33} The majority's conclusion does not appear to apply to the claimant who satisfies any one of the first three categories that terminate a claimant's right to TTD compensation, or when there is *uncontested* evidence that the claimant has reached MMI. In those instances, TTD is no longer payable on the date that the claimant has indisputably reached MMI and recoupment of overpayment is available from the undisputed date of termination.

{¶ 34} However, in situations where there is conflicting evidence as to whether or when MMI has been attained, the existence of a conflicting report from a nonattending physician is merely evidence to present at the hearing. *AT & T Technologies, Inc. v. Indus. Comm.* (1993), 68 Ohio St.3d 55, 58, 623 N.E.2d 63, 65. The purpose of the administrative hearing is to determine, based upon the conflicting reports, whether the claimant has reached MMI. Until the issue is resolved, the claimant remains entitled to receive TTD compensation pursuant to the existing order so long as the claimant's attending physician provides medical certification of the continuing disability. Thus, I concur with the majority's holding that payment of TTD should terminate on the date of the hearing resolving the dispute, not the date offered in the conflicting medical report. Under this scenario, recoupment of overpayments is not at issue because, until the termination order is issued, the claimant has met all the conditions of, and is entitled to, the TTD compensation.

{¶ 35} Therefore, to the extent that the majority's opinion strikes a fair balance between the rights of the injured worker and the rights of the employer, I concur.

_____

**COOK, J., dissenting.**

{¶ 36} The majority opinion effectively permits the retention of temporary total disability ("TTD") compensation by claimants who are not temporarily and totally disabled. I therefore respectfully dissent.

{¶ 37} The language of R.C. 4123.56(A) conflicts with the majority's position. It states:

"[P]ayments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer * * *. Payments shall continue pending the determination of the matter, *however payment shall not be made for the period in which any employee has * * * reached the maximum medical improvement*." (Emphasis added.)

{¶ 38} The recoupment provisions of R.C. 4123.511(J), in correlation with the above-emphasized language, further undermine the majority's position. Directed at claimants who have been "found to have received compensation to which the claimant was not entitled," R.C. 4123.511(J) demonstrates a legislative expectation that compensation will be repaid by claimants who do not meet the eligibility criteria. Non-eligibility is the key to the right to recoupment. The payment of continued benefits pending a hearing to determine eligibility does not equate with eligibility. A claimant may be eligible to *receive payments*, but later determined to be *ineligible to retain those payments*. Continuing payments is a fair method to accommodate the reality that the system does not permit instantaneous hearings.

{¶ 39} The majority relies upon a single case—*State ex rel. McGinnis v. Indus. Comm.* (1991), 58 Ohio St.3d 81, 568 N.E.2d 665, a case which we ought to reconsider because the cases it relies upon do not justify the decision. In *McGinnis*, claimant's ongoing TTD compensation was challenged by his employer, which alleged that as of September 30, 1982, claimant could return to his former position

of employment. However, because claimant's attending physician continued to certify an inability to return to work, TTD compensation continued until the January 18, 1984 district hearing officer hearing. At the hearing, the district hearing officer ("DHO") terminated compensation effective September 30, 1992. The DHO specifically discounted the attending physician's reports because he had considered nonallowed conditions. Later, all TTD compensation paid after September 30, 1982 was declared overpaid, prompting claimant's mandamus challenge.

{¶ 40} The court of appeals found that the commission abused its discretion in assessing an overpayment, and this court affirmed. This court relied on the standard articulated in *State ex rel. Martin v. Connor* (1984), 9 Ohio St.3d 213, 9 OBR 523, 459 N.E.2d 889. There, the court ruled that compensation could be recouped from a claimant only where (1) subsequent information revealed the claimant was not entitled to the money, and (2) the parties believed at the time of payment that the claimant was not so entitled.

{¶ 41} In applying *Martin, McGinnis* reasoned that R.C. 4123.56(A) mandated continued TTD compensation in the event of a dispute. As such, claimant was entitled to the funds, and they could not be taken away. Unfortunately, closer review reveals that in applying *Martin, McGinnis* only perpetuated an earlier standard that is legally unsound and fiscally untenable.

{¶ 42} *Martin* involved Disabled Workers' Relief Fund ("DWRF") benefits to a claimant from 1976 to 1981. Because the DWRF amount was tied to the amount of disability Social Security benefits ("DSS") received, a subsequent discovery of DSS underpayment meant that DWRF had been overpaid. Efforts by the Bureau of Workers' Compensation to recover the overpayment via compensation offset were opposed in mandamus.

{¶ 43} This court permitted the claimant to keep the nine thousand dollar overpayment. To do so, however, it was necessary to distinguish *State ex rel. Weimer v. Indus. Comm.* (1980), 62 Ohio St.2d 159, 16 O.O.3d 174, 404 N.E.2d

149, which four years earlier had upheld the commission's recovery of an overpayment generated by clerical error.

{¶ 44} *Martin* compared *Weimer* with an even earlier case—*Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 135 N.E. 669. *Martin* stated that the difference between *Weimer* and *Dell* was the parties' good faith belief in compensation entitlement when payment occurred. *Martin* held that neither the bureau nor the claimant in *Weimer* could have legitimately believed that claimant was entitled to the overpaid amount, even when made. *Martin*, therefore, relied on *Dell*—a case which, according to the *Martin* majority, prohibited recoupment from one with an initial good faith belief in compensation entitlement.

{¶ 45} The problem is that *Dell* said no such thing. *Dell* was a continuing jurisdiction case, not a recoupment case. *Dell* involved the receipt of death benefits by a widow whose decedent also had an undisclosed and undivorced first wife. *Dell* addressed the commission's continuing jurisdiction to reopen the issue of benefit eligibility and stop payments to the second woman. *Dell never* discussed the status of payments already made and *never* stated—expressly or impliedly—that the second wife could keep the money. To the contrary, this passage from *Dell* suggests the opposite:

"The commission should be held to have inherent power to prevent the misappropriation or the misapplication of the insurance fund to claimants who are afterwards found not to be entitled thereto. The state insurance fund is in the nature of a trust fund and it is the duty of the commission to impartially distribute the same among persons entitled thereto and not permit the fund to be depleted or become the object of fraud or imposition, and it being clearly their moral and legal duty to correct any mistake or fraud or imposition which will result in a misapplication or a misappropriation of any part of the fund the law should not be so construed, even in case of the ambiguity, neither should the legislature be held to have intended to enact any provisions which would hamper in any manner or interfere with the

members of the commission in their efforts to properly protect the fund." *Id*. at 396-397, 135 N.E. at 672.

{¶ 46} In attempting to equate *Weimer* and *Dell, Martin* created a recoupment standard that lacks legal foundation. This, in turn, discredits *McGinnis*'s premise. Equally important, *Dell* embodies a pivotal question, that is, why a claimant who is not temporarily and totally disabled can be permitted to retain TTD benefits?

{¶ 47} The majority's decision disregards three workers' compensation tenets: *Dell*'s prohibition against fund misapplication; the prohibition against claimant windfalls pronounced in *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 551 N.E.2d 1265; and the "some evidence" rule. In addition, it essentially renders meaningless the prerequisites to TTD compensation set down in *State ex rel. Ramirez v. Indus. Comm*. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586.

{¶ 48} For the reasons stated above, I would deny the writs of mandamus and prohibition.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____