DECISION
{¶ 1} Relator, Evelyn Byrd, commenced this original action requesting a writ of mandamus that orders respondent Industrial Commission of Ohio to vacate its order denying her application for temporary total disability compensation and to find that she is entitled to that compensation.
 {¶ 2} Pursuant to Civ.R. 53 and Section (M), Loc.R. 12 of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate determined relator had not demonstrated the commission abused its discretion in denying her application for temporary total disability compensation. Accordingly, the magistrate determined the requested writ should be denied.
 {¶ 3} Relator has filed an objection to the magistrate's conclusions of law, contending the magistrate erred in finding the commission's denial of temporary total disability compensation was not an abuse of discretion. According to relator, "the only reason the Industrial Commission denied Relator's request for [temporary total disability] compensation from April 27, 2002 through July 14, 2002 was that she did not apply for same until after being declared MMI in a separate claim for a separate body part." (Relator's Objections, 6.)
 {¶ 4} Relator sought temporary total disability compensation from April 27, 2002 through July 11, 2002 because of her right carpal tunnel syndrome. The commission noted relator had submitted no evidence of treatment to or disability in her right wrist from the time of her post-surgery treatment in 2000 until she was determined to be at maximum medical improvement in her left wrist, causing the termination of temporary total disability benefits arising from the allowed conditions in the left wrist. Indeed, her treating physician, Dr. Hernandez, stated that relator "only started therapy on her right wrist in May 2002." (Magistrate's Decision, ¶ 24.) Coupling that information with the report of Dr. Ungar, the commission properly could deny relator's request for temporary total disability compensation. Accordingly, relator's objection is overruled.
 {¶ 5} Following independent review pursuant to Civ.R. 53, we find the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained in it. In accordance with the magistrate's decision, the requested writ of mandamus is denied.
Objection overruled; writ denied.
PETREE, P.J., and BROWN, J., concur.
 DECISION IN MANDAMUS {¶ 6} Relator, Evelyn Bryd, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for temporary total disability ("TTD") compensation and ordering the commission to find that she is entitled to that compensation.
Findings of Fact:
 {¶ 7} 1. Due to her employment with respondent Venture Lighting International, Inc. ("employer"), relator developed carpal tunnel syndrome in both of her hands. In January 1998, the condition was diagnosed in her right hand and carpal tunnel release surgery was performed in September 2000. This claim number is designated as 98-567666 and is specifically allowed for the following conditions: "carpal tunnel syndrome/-median neuritis (right)." (The current action involves this claim and the allowed conditions for the right wrist.)
 {¶ 8} 2. In April 1999, relator was diagnosed as having "tendonitis left wrist and carpal tunnel syndrome left wrist." This claim was assigned claim number 99-376458.
 {¶ 9} 3. Relator received TTD compensation in her 1999 claim involving her left hand from the date of surgery through April 27, 2002. At that time, the commission determined that relator had reached maximum medical improvement ("MMI") with regard to her left wrist.
 {¶ 10} 4. On May 10, 2002, relator filed a C-84 form with the Ohio Bureau of Workers' Compensation ("BWC") seeking TTD compensation from April 27, 2002 through an estimated return-to-work date of July 15, 2002. The TTD compensation was for relator's right wrist.
 {¶ 11} 5. The BWC issued an order granting relator's request for TTD compensation based solely upon the C-84 form supported by relator's treating physician Dr. Juan Hernandez.
 {¶ 12} 6. The employer appealed.
 {¶ 13} 7. Prior to a hearing before a district hearing officer ("DHO"), certain evidence was presented. Relator submitted the May 22, 2002 report of Dr. Hernandez and attached a copy of an EMG report. Dr. Hernandez stated as follows in his report:
 {¶ 14} "Evelyn Byrd is currently under my medical care for the above diagnosis. I am attaching a copy of a recent EMG/NCS for this patient. She is S/p right carpal tunnel release surgery in September 2000. She has been suffering with right hand dysfunction, significant weakness of grip and unrelenting numbness. The recent EMG/NCS reveals persistent median neuropathy as well as ulnar neuropathy.
 {¶ 15} "I have requested consult with a hand surgeon. She wears splint and compression glove at present. Given the EMG/NCS results and her marked dysfunction of the right hand; in all likelihood, she will require additional surgery."
 {¶ 16} 8. An independent medical examination was performed by Dr. Ira J. Ungar who examined relator on July 9, 2002. Dr. Ungar noted that relator had been off work from September through December 2000 as a result of the right hand carpal tunnel and thumb surgeries. At the end of that time, relator underwent left carpal tunnel release and continued to be off work through April 2002. Dr. Ungar noted that he had evaluated relator on May 14, 2002 for her left wrist. Dr. Ungar noted as follows:
 {¶ 17} "* * * At that time I evaluated the right at the same time for comparison. At that time it was noted that there was substantial evidence of symptom misrepresentation and magnification in both provocative testing for carpal tunnel syndrome using Tinel's test, 2 point discrimination and manual muscle testing."
 {¶ 18} Dr. Ungar noted in his conclusions as follows:
 {¶ 19} "Objective physical evaluation today revealed substantial evidence of symptom misrepresentation to the point of malingering. Although Ms. Byrd has completely normal looking hands without evidence of atrophy, she barely generates any force with manometric testing. Despite this, she is able to use firm pincer grasp to pull on her wrist splints and close them without difficulty.
 {¶ 20} "At this time, the only objective findings are those of symptom misrepresentation and magnification. Although EMG revealed mild median mono-neuropathy in April of 2002 this clearly is residual from previous median nerve compression. This level of findings on electrodiagnostic studies can not describe the subjective complaints that Ms. Byrd continues to complain of.
 {¶ 21} "Clearly, Ms. Byrd has reached a treatment plateau for which no fundamental, functional, or physiologic improvement can be expected. Ms. Byrd in my medical opinion, based on a reasonable degree of medical certainty has reached maximum medical improvement. No amount of additional physical therapy will result in any further improvement in her symptomatology.
 {¶ 22} "* * *
 {¶ 23} "In my medical opinion, based on a reasonable degree of medical certainty, noting normal appearing hands with no evidence of atrophy and full range of motion, Ms. Byrd is capable of performing all job activities required of her at her previous level of employment. She requires no work restrictions."
 {¶ 24} 9. Dr. Hernandez submitted an additional report wherein he explained that relator had significant post-operative difficulty following the December 2000 surgery on her left wrist. He noted further that relator had only started therapy on her right wrist in May 2002 and that, according to him, she had not reached MMI.
 {¶ 25} 10. The matter was heard before a DHO on July 18, 2002 and resulted in an order denying relator's application for TTD compensation based upon Dr. Ungar's conclusion that relator had reached MMI for her right carpal tunnel syndrome and that no amount of additional physical therapy will result in any further improvement as well as the fact that Dr. Ungar opined that relator was capable of returning to her former position of employment.
 {¶ 26} 11. Relator appealed the matter to a staff hearing officer ("SHO").
 {¶ 27} 12. Prior to the hearing before the SHO, relator submitted the report of Dr. William H. Seitz to whom Dr. Hernandez referred relator for consultation. Dr. Seitz noted that relator "has markedly diminished sensation to light touch in the median nerve distribution," and that "[s]he has an exquisitely positive Tinel's and Phalen's overlying the median nerve in both wrist and she has nodularity with tenderness in the 1st extensor compartment with a positive Finkelstein's test consistent with deQuervain's tenosynovitis." Dr. Seitz recommended that relator proceed to occupational therapy for carpal tunnel resting splints, instruction of warm soaks and range of motion exercises, and that she begin a combination of Celebrex and Medrol Dosepak. He indicated that he would see relator again in six weeks.
 {¶ 28} 13. The matter was heard before an SHO on October 8, 2002 and resulted in an order vacating the prior DHO order but denying relator's requested period of TTD compensation nevertheless. The SHO denied the application for the following reasons:
 {¶ 29} "The claimant underwent right carpal tunnel release in this claim on 09/24/2000 and received appropriate treatment and compensation. She had a left carpal tunnel release in #99-376458 and was paid temporary total compensation until 04/22/2002 at which time she was determined to have reached maximum medical improvement.
 {¶ 30} "Coincidentally, there is no evidence of treatment or disability to her right wrist until after the claimant was declared maximum medically improved in the compensation claim.
 {¶ 31} "The denial of compensation is also based on the 07/14/02 report of Dr. Ungar who stated that the claimant has reached maximum medical improvement."
 {¶ 32} 14. Further appeal by relator was refused by order of the commission mailed November 6, 2002.
 {¶ 33} 15. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 34} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 35} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, the Supreme Court of Ohio has held that TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is capable of returning to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) when claimant has reached MMI. State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630; R.C. 4123.56(A).
 {¶ 36} It is undisputed that a claimant bears the burden of proving entitlement to compensation for injuries. In the present case, the commission denied relator's application for TTD compensation for two reasons. The first reason that the commission denied her application was due to a lack of medical evidence substantiating her entitlement to that compensation. Specifically, the commission noted that there was no evidence of treatment or disability submitted by relator involving her right wrist until after she had been declared to have reached MMI with regard to her left wrist. This is even born out by the statement of relator's treating physician, Dr. Hernandez, when, in his July 17, 2002 report, he noted that relator only began receiving therapy on her right wrist in May 2002. Although Dr. Hernandez indicated that relator had significant post-operative difficulty following the December 2000 surgery for her left wrist, he did not make any statements regarding relator's convalescence following the surgery to her right wrist. The commission determined that the lack of any treatment for her right wrist or any further requested periods of disability for her right wrist contradicted her current assertion that she was temporarily and totally disabled due to the conditions allowed in this claim.
 {¶ 37} The commission also relied upon the July 14, 2002 report of Dr. Ungar who evaluated both wrist and concluded that relator was magnifying her symptoms and that, when he had examined her in May 2002, he believed that she had reached MMI at that time.
 {¶ 38} Relator challenges this conclusion of the commission for two reasons. First, relator contends that reliance upon the report of Dr. Ungar is improper because of the convincing evidence provided by Drs. Hernandez and Seitz. However, in State ex rel. Bell v. Indus. Comm. (1995), 72 Ohio St.3d 575, the Supreme Court of Ohio rejected the assertion that a treating physician's report is entitled to enhanced weight.
 {¶ 39} Second, relator contends that reliance upon Dr. Ungar's report violates the holding of State ex rel. Russell v. Indus. Comm. (1998), 82 Ohio St.3d 516. However, relator's reliance upon Russell is misplaced. In Russell, the court held as follows:
 {¶ 40} "The appropriate date on which to terminate disputed temporary total disability compensation on the basis of maximum medical improvement is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date." Id. at syllabus.
 {¶ 41} This court has held that Russell only applies to an ongoing award of TTD compensation which is subsequently terminated and does not apply to a motion re-questing the commencement of TTD compensation. See, e.g., State ex rel. Youngstown Hosp. Assoc. v. Indus. Comm. (Dec. 14, 1999), Franklin App. No. 98AP-1630.
 {¶ 42} In the present case, the commission denied relator's application for the commencement of TTD compensation in part based upon the conclusion of Dr. Ungar that she had reached MMI. Because the commission was not using the date of Dr. Ungar's report to terminate TTD compensation, Russell has not been violated.
 {¶ 43} As stated previously, the commission denied relator's request for TTD compensation because she had failed in her burden of proof and because Dr. Ungar had opined that she had reached MMI. This magistrate finds that relator's arguments challenging the commission's order lack merit.
 {¶ 44} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying her application for TTD compensation and this court should deny relator's request for a writ of mandamus.