DECISION ON OBJECTIONS TO MAGISTRATE'S DECISION ON MOTION
{¶ 1} Relator, Apcompower, Inc., filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On December 24, 2003, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court issue a limited writ returning this matter to respondent, Industrial Commission of Ohio ("the commission") for further consideration of temporary total disability ("TTD") compensation for the period December 7, 2001, to the date upon which Dr. Herbst first examined respondent, John W. Martin ("the claimant"). (Attached as Appendix A.) Relator and the commission timely filed objections to the magistrate's decision, which are now before the court.
 {¶ 2} Prior to addressing the objections, however, we must first address relator's motion for leave to supplement the joint stipulated record. Relator seeks to supplement the record with (1) a copy of a Staff Hearing Officer order issued in the administrative proceedings in the within matter, evidencing that, on at least one occasion, attorney John Lesko, who is an associate of the claimant's counsel of record, attorney William Snyder, appeared on behalf of the claimant at a commission hearing; (2) a copy of a Civ.R. 41(A) notice of dismissal filed on behalf of the claimant in the Hamilton County Court of Common Pleas, in a case involving relator, which notice evidences that attorney Lesko is employed by William D. Snyder Associates; and (3) a copy of the cover letter signed by attorney Lesko and enclosed with the aforementioned Civ.R. 41(A) notice sent to attorney Joshua Bills, counsel for relator.
 {¶ 3} Apparently, by its attempt to supplement the record with these items, relator seeks to provide evidence that attorney Lesko has acted as an attorney representing the claimant, for the purpose of prevailing in relator's argument that any notice of independent medical examination that relator sent to attorney Lesko constitutes notice to the claimant of such examination. However, the items only prove that attorney Lesko represented the claimant, and that attorney Lesko is associated with the law office of attorney Snyder, who is listed as the attorney of record for the claimant on all Records of Proceedings contained in the joint stipulated record for which an attorney of record is listed for the claimant. The items do not prove that attorney Snyder received relator's notices of independent medical examination.
 {¶ 4} Ultimately, however, the commission — not this court — is the exclusive evaluator of the weight and credibility of the evidence. State ex rel. LTV Steel Co. v. Indus. Comm. (2000),88 Ohio St.3d 284, 287, 725 N.E.2d 639. The commission credited the claimant's testimony with respect to his failure to receive notices to appear for independent medical examinations in 2001, which is all that is necessary to sustain its decision that the claimant's failure to appear for the examinations was not "without good cause." Because relator's proposed additions to the record provide nothing that would compel, or even allow us to overturn the commission's finding with respect to this issue, we see no reason why we should allow supplementation of the record therewith. Furthermore, we perceive no indication that relator raised before the commission the issue whether notice to the claimant's attorney constitutes notice to the claimant. The commission cannot be found to have abused its discretion for not considering an issue not raised by the person complaining of the inaction by the commission. State ex rel. General Motors Corp.v. Indus. Comm. (Mar. 20, 1990), Franklin App. No. 88AP-1084. For all of the foregoing reasons, relator's motion for leave to supplement the stipulated record is hereby denied.
 {¶ 5} Turning now to the objections to the magistrate's decision, relator argues first that the magistrate erred in determining that the commission correctly interpreted the effect of R.C. 4123.651 in paying the claimant TTD compensation retroactively for the period of claim suspension. Relator asserts that the language of that statute is unambiguously intended to punish claimants for refusing to attend independent medical examinations by forever denying them benefits for the period of refusal. We disagree. The statute provides, in pertinent part:
If, without good cause, an employee refuses to submit to any examination scheduled under this section or refuses to release or execute a release for any medical information, record, or report that is required to be released under this section and involves an issue pertinent to the condition alleged in the claim, his right to have his claim for compensation or benefits considered, if his claim is pending before the administrator, commission, or a district or staff hearing officer, or to receive any payment for compensation or benefits previously granted, is suspended
during the period of refusal.
R.C. 4123.651(C). (Emphasis added.)
 {¶ 6} To begin, in this case the commission specifically found that the claimant had not been "without good cause" in failing to attend scheduled independent medical examinations. Thus, any punitive aspect of this section would not apply to the claimant herein. Second, we do not read the plain language of R.C. 4123.651(C) to direct that TTD benefits to which a claimant would otherwise be entitled are to be withheld permanently, even upon a finding that the claimant failed to attend scheduled independent medical examinations without good cause. If the General Assembly had so intended, it could have used the words "extinguished" or "disallowed" instead of "suspended," and rather than taking away the right to receive benefits "previously granted," it could have taken away the right to receive benefits, e.g., "for the period of non-compliance."
 {¶ 7} We read the words of this statute as the magistrate did. The statute provides for suspension of payments of benefits previously granted (that is, benefits to which the claimant has proven him-or herself entitled), for those claimants who, without good cause, fail to attend scheduled independent medical examinations, and provides that the suspension is in effect "during the period of refusal"; that is, not forever. We disagree with relator's characterization of this interpretation as providing claimants "a windfall." To pay a claimant TTD benefits for which the claimant has medically demonstrated his or her entitlement, no matter when payment is ultimately made, does not allow the claimant to reap a windfall. Relator's first objection is overruled.
 {¶ 8} In its second objection, relator argues that the magistrate erred in failing to address its request for a writ of mandamus ordering the commission to terminate TTD benefits as of March 8, 2002, the date as of which, relator argues, it proved the claimant had reached maximum medical improvement ("MMI"). Relator argues that the claimant presented no evidence disputing relator's medical evidence establishing that the claimant had reached MMI as of the aforementioned date. First, this is factually incorrect. Prior to the June 19, 2002 hearing before the District Hearing Officer, the claimant submitted the C-84 of Dr. Herbst, in which the physician certified TTD compensation through November 2002.
 {¶ 9} Moreover, even if the district hearing officer had found the claimant to have reached MMI, the Supreme Court of Ohio has clearly held that a hearing officer may not terminate a claimant's TTD retroactive to a date prior to the date of hearing. State ex rel. Russell v. Indus. Comm. (1998),82 Ohio St.3d 516, 522, 696 N.E.2d 1069. Pursuant to R.C. 4123.56(A), only when TTD compensation is unilaterally terminated, with no dispute, shall payment not be made for any period in which the claimant has reached MMI. But if TTD continues to be paid, and an employer later obtains medical evidence demonstrating that MMI was reached at some previous date, then TTD may only terminate as of the date that a commission hearing officer finds that MMI has in fact been reached. Thus, since the staff hearing officer was the first hearing officer to conclude that the claimant had reached MMI (based on Dr. Autry's report), the date of termination was properly set forth as December 23, 2002 — the date of the hearing before that staff hearing officer. Though the magistrate did not address relator's argument regarding the date upon which TTD compensation should have been terminated, the magistrate's decision is nonetheless correct on the issue of the award of TTD compensation. Relator's second objection is overruled.
 {¶ 10} Finally, the commission filed an objection simply pointing out that the magistrate made a clerical error in the final paragraph of her decision, in which she recommends that the court return this matter to the commission for consideration of the period from December 7, 2001 "to the date in May 2001 on which Dr. Herbst first examined claimant * * *." As the commission correctly points out, and as the magistrate noted earlier in her decision, Dr. Herbst first examined the claimant in May 2002. The commission's sole objection is sustained.
 {¶ 11} After an examination of the magistrate's decision, an independent review pursuant to Civ.R. 53, and due consideration of the parties' objections, we overrule relator's objections, sustain the commission's objection, and find that the magistrate correctly and appropriately determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, with the modification noted in paragraph 10, supra, including the findings of fact and conclusions of law contained therein, and grant a limited writ of mandamus ordering the commission to further consider the evidence with regard to the issue of the claimant's entitlement to TTD compensation for the period from December 7, 2001, through the date in May 2002 on which Dr. Herbst first examined the claimant.
Commission's objection sustained; relator's objectionsoverruled; motion for leave to supplement stipulated recorddenied; limited writ of mandamus granted.
Lazarus, P.J., and Bryant, J., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Apcompower, Inc.,: Relator, : v. : No. 03AP-718 Industrial Commission of Ohio : (REGULAR CALENDAR) and John W. Martin, : Respondents. :
 MAGISTRATE'S DECISION Rendered on December 24, 2003 Reminger Reminger Co., LPA, Mick L. Proxmire and Ronald A.Fresco, for relator.
Jim Petro, Attorney General, and Erica L. Bass, for respondent Industrial Commission of Ohio.
William D. Snyder Associates, and Gary P. Martin, for respondent John W. Martin.
 IN MANDAMUS {¶ 12} In this original action in mandamus, relator, Apcompower, Inc., asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for temporary total disability ("TTD") and to issue an order denying compensation, or in the alternative, denying compensation for the period of time for which there is no medical evidence from an examining physician to support TTD.
Findings of Fact:
 {¶ 13} 1. On May 10, 2000, John W. Martin ("claimant") sustained an industrial injury, and his workers' compensation claim was allowed for: "fracture phalanx, footclosed, right; fracture foot bone Nos-closed, right." TTD compensation was awarded from May 24, 2000 to September 27, 2000, and to continue on submission of medical evidence.
 {¶ 14} 2. On July 12, 2000, claimant's treating physician, John Linz, M.D., completed a C-84 form certifying TTD compensation from May 24, 2000 to an estimated return to work on September 12, 2000.
 {¶ 15} 3. The employer scheduled claimant for an independent medical examination on April 19, 2001. Claimant did not attend. The employer scheduled another examination for May 29, 2001, and claimant did not attend that examination.
 {¶ 16} 4. On August 20, 2001, the Ohio Bureau of Workers Compensation ("bureau") suspended all activity in the claim due to claimant's failure to attend the employer's examinations.
 {¶ 17} 5. On September 13, 2001, Dr. Linz certified TTD from May 10, 2000 to December 7, 2001.
 {¶ 18} 6. In November 2001, claimant notified the commission that he had been unaware of the employer's medical examinations because the notices had been sent to an incorrect address. Claimant wrote that he would attend any examination scheduled in his claim.
 {¶ 19} 7. On March 8, 2002, claimant attended an examination scheduled by the employer with Stephen T. Autry, M.D., who found a mild sympathetic dystrophy of the right lower extremity caused by the industrial injury. Dr. Autry also opined that claimant had reached maximum medical improvement ("MMI") for all allowed conditions.
 {¶ 20} 8. In April 2002, the employer moved to terminate TTD based on MMI.
 {¶ 21} 9. In May 2002, claimant filed a motion asking that his claim be allowed for reflex sympathetic dystrophy ("RSD") of the right lower extremity. Further, he requested continuation of TTD through May 9, 2002, and to continue.
 {¶ 22} 10. In May 2002, possibly as early as May 2, 2002, claimant consulted Robert Herbst, M.D.
 {¶ 23} 11. On May 23, 2002, claimant visited Dr. Herbst, and, on May 24, 2002, he completed a change-of-physician form that was filed in June 2002.
 {¶ 24} 12. In June 2002, a file review was provided by W. Gibson, M.D. Almost all of Dr. Gibson's analysis is devoted to the issue of whether RSD should be allowed in the claim. However, Dr. Gibson included one comment regarding TTD, as follows: "The proposed period of medical disability from 8-15-01 to 5-9-02 does appear appropriate and causally related to the injury of record."
 {¶ 25} 13. In December 2002, a staff hearing officer awarded TTD compensation as follows:
The Staff Hearing Officer finds that the injured worker failed to appear for employer-scheduled medical examinations in 2001 and all activity was suspended in this claim by the order of the Cincinnati Hearing Administrator mailed 8/14/01. The Staff Hearing Officer further finds that the injured worker appeared for an employer scheduled exam on 3/8/02. The injured worker testified at hearing that he did not receive the notices to appear for medical examinations in 2001. The Staff Hearing Officer finds the injured worker's testimony to be credible. The Staff Hearing Officer further finds that the injured worker has been unable to return to and perform the duties of his former position of employment for the period 8/14/01 to the present date as a result of the allowed conditions in this claim. Therefore, temporary total compensation has been properly paid for this period based on the medical reports of Dr. Gibson and Dr. Herbst.
The Staff Hearing Officer further finds that the injured worker has reached maximum medical improvement for the allowed conditions in this claim. Therefore, temporary total compensation is ordered terminated on that basis effective the date of this hearing, 12/23/02, based on the medical report of Dr. Autry.
 {¶ 26} 14. Further appeal was refused.
Conclusions of Law:
 {¶ 27} The employer raises two arguments in support of this mandamus action: that the commission abused its discretion in awarding TTD compensation for a period of time during which the claim was formerly suspended, and that the commission abused its discretion in granting TTD for a period of time for which there was no valid C-84 certification of disability nor other medical report establishing TTD.
 {¶ 28} As for the first argument, the employer misinterprets the statute regarding suspension of claims. R.C. 4123.561 merely suspends processing of claims and payments during the period of noncompliance. As soon as the suspension is lifted, the commission has discretion to resume processing a claim and to send any payments that have been held. If the statute forever barred claimants from receiving compensation for the period during which their claims are suspended, the bureau and commission would simply order that all compensation is "denied" for the period of noncompliance. Instead, the bureau and commission, pursuant to the statute, simply "suspend" the claim.
 {¶ 29} Here, the magistrate finds no failure to comply with the statute. It is undisputed that claimant did not "receive" any payment of compensation "during" the period that his claim was suspended. He received the payments only after the suspension was lifted. While it is true that he eventually received payments that covered or related to periods of time when his claim had formerly been suspended, the statute does not prohibit that. R.C. 4123.561 prohibits only "receiving" a payment "during" the suspension. Given the purpose of the workers' compensation statutes generally, and due to the punitive nature of suspensions, the magistrate construes R.C. 4123.561 strictly according to its exact language. See, generally, R.C. 4123.95
(requiring that the workers' compensation statutes be construed in favor of injured workers). If the legislature had wanted to state that the commission must deny all disability compensation for the entire period of time during which the claimant is not in compliance, it could easily have said so.
 {¶ 30} More importantly, the commission found that the claimant's nonappearance at the medical examinations was not a deliberate refusal to attend but that claimant did not receive the notices. Thus, the commission's reason for lifting the suspension was not that claimant had stopped refusing to be examined, but that he had never refused in the first place. Based on specific findings of fact, the commission essentially found no knowing or willful noncompliance.
 {¶ 31} With respect to the medical evidence, the magistrate agrees that TTD compensation must be supported by relevant medical findings that have been made by an examining physician. See, e.g., State ex rel. Simon v. Indus. Comm. (1994),71 Ohio St.3d 186. In the present action, Dr. Gibson's opinion was not only the opinion of a nonexamining physician, but it was also aretrospective opinion that claimant was temporarily and totally disabled during a period when Dr. Linz had ceased examining claimant and Dr. Herbst had not yet seen claimant. From November 2, 2001 (the last examination by Dr. Linz) to some point in May 2002 (the first examination by Dr. Herbst), there is no evidence that claimant visited any physician.
 {¶ 32} The opinion of a nonexamining physician can constitute "some evidence" of TTD where the reviewer explicitly accepts the medical findings generated by examining physicians during the relevant period of time. State ex rel. Bowie v. GreaterCleveland Regional Transit Auth. (1996), 75 Ohio St.3d 458;State ex rel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55. However, where there are no medical findings generated by examining physicians during the relevant period of time, a further problem must be overcome with respect to the absence of findings on which the reviewer can rely. A lack of any examinations or treatment during the disputed period of time may be fatal to a request for TTD compensation, regardless of whether the reporting physician is an examiner or merely a file reviewer.Simon, supra. In cases where a reviewer is relying on medical reports that in themselves do not provide sufficient relevant findings, the review report lacks a sufficient medical foundation.
 {¶ 33} To provide a retrospective disability opinion, an examining physician must, at the least, "review all of the relevant medical evidence generated prior to that time." Bowie,
supra, at 460. In the present action, however, Dr. Gibson did not review all of the relevant medical evidence generated prior to his review. Although Dr. Gibson opined that "medical disability from 8-15-01 to 5-9-02 does appear appropriate," he reviewed no medical report prior to March 8, 2002. Dr. Gibson provided no review of Dr. Linz's findings from August 2001 through November 2, 2001, and instead focused solely on the March 2002 report of Dr. Autry and a May 2002 X-ray. The magistrate concludes that Dr. Gibson's opinion with respect to TTD from August 15, 2001 to May 9, 2002 cannot constitute "some evidence" on which the commission may rely because he failed to set forth a review of the relevant medical reports for that period of time.
 {¶ 34} Therefore, in the subject order, the commission failed to cite medical evidence of TTD for each period of time at issue. Dr. Herbst did not see claimant until some point in May 2002 and could not render a retrospective opinion unless he reviewed all the relevant medical evidence and explicitly set forth a retrospective opinion. Dr. Gibson's report, as explained above, did not support a retrospective opinion of TTD. Claimant argues that Dr. Autry's report supports a finding of TTD, but the commission did not rely on Dr. Autry's opinion in awarding TTD compensation.
 {¶ 35} The magistrate recommends against the court's performing the commission's role as the finder of fact. Rather, the court should return this matter to the commission for further consideration of the evidence and a determination of whether it finds persuasive medical evidence to support claimant's request for TTD compensation. If it grants the requested compensation, it must cite evidence that supports the entire period granted. As to whether the commission should obtain a new file review, addressing the question of TTD and reviewing all the relevant medical evidence, that matter is best left to the sound discretion of the commission.
 {¶ 36} The magistrate recommends that the court issue a limited writ returning this matter to the commission for further consideration of the period from December 7, 2001 (the date to which Dr. Linz certified TTD) to the date in May 2001 on which Dr. Herbst first examined claimant (a date for determination by the commission) and to issue an amended order that either cites the evidence supporting TTD for the period of time at issue or denies compensation for any period as to which the file lacks sufficient evidence of TTD.
 /s/ P.A. Davidson 
P.A. DAVIDSON MAGISTRATE