[Cite as *State ex rel. Dillon v. Indus. Comm.*, 2022-Ohio-4773.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Loretta Dillon,         :

       Relator,         :

v.         :         No. 20AP-600

Industrial Commission of Ohio et al.,         :         (REGULAR CALENDAR)

       Respondents.         :

D E C I S I O N

Rendered on December 29, 2022

**On brief:** *Knisley Law Offices*, *Daniel S. Knisley*, and *Kurt A. Knisley*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

IN MANDADMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

KLATT, J.

{¶ 1} Relator, Loretta Dillon, commenced this original action in mandamus seeking an order compelling respondent, Industrial Commission of Ohio ("commission"), to vacate its orders that declared an overpayment of $5,549.40 in temporary total disability ("TTD") compensation, and to issue an order dissolving the overpayment.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate found that the commission did not err when it declared an overpayment of TTD compensation. In reaching this

conclusion, the magistrate found that *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516 (1998), did not apply. In *Russell*, the court held that the commission may not declare an overpayment of TTD compensation payments received by the claimant before the date of the termination hearing as long as the claimant's attending physician had certified the TTD. The magistrate found that *Russell* did not apply because, here, the issue before the commission was the claimant's initial application for the commencement of TTD compensation and not a request to terminate a prior final administrative order awarding TTD compensation. Therefore, the magistrate has recommended that we deny relator's request for a writ of mandamus.

{¶ 3} Relator has filed an objection to the magistrate's decision. Relator argues that the magistrate erred when he distinguished *Russell* and did not order the commission to dissolve the overpayment. Relator argues that *Russell* applies as long as there was a preceding order by the commission awarding TTD compensation and the claimant established entitlement to ongoing TTD compensation through the submission of further medical proof. Here, because relator was receiving TTD compensation pursuant to a district hearing officer's ("DHO") order, and was submitting further medical proof of entitlement to that compensation, relator contends that *Russell* prohibits the declaration of an overpayment for any period of time prior to the November 2, 2019 hearing before the staff hearing officer ("SHO") that ended the TTD compensation payments. Therefore, relator contends the commission erred when it calculated the overpayment based on payments relator received after the end of the period for which TTD compensation was awarded pursuant to a final administrative order. We disagree.

{¶ 4} In *Russell*, the court held that the appropriate date on which to terminate disputed TTD compensation on the basis of the claimant's allowed condition having reached maximum medical improvement ("MMI") is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date. However, *Russell* involved the *termination* of an *established* TTD compensation award. When the issue before the commission is not the termination of an established TTD compensation award, but the determination of a claimant's request for an initial period of TTD compensation, *Russell* does not apply.

{¶ 5}　In *State ex rel. Byrd v. Venture Lighting Internatl., Inc.*, 10th Dist. No. 02AP-1310, 2003-Ohio-5578, ¶ 41, this court stated:

> This court has held that *Russell* only applies to an ongoing award of TTD compensation which is subsequently terminated and does not apply to a motion requesting the commencement of TTD compensation. *See, e.g., State ex rel. Youngstown Hosp. Assoc. v. Indus. Comm.* (Dec. 14, 1999), Franklin App. No. 98AP-1630.

{¶ 6}　*Byrd* cites to *Youngstown Hosp. Assn. v. Indus. Comm.*, 10th Dist. No. 98AP-1630 (Dec. 14, 1999) (memorandum decision) at 3-4, a case that involved an initial determination of whether the claimant was entitled to TTD compensation, and if so, for what period of time.　The court held that such a determination did not implicate *Russell* because, unlike *Russell*, it did not involve the termination of ongoing TTD compensation that was being paid pursuant to a prior final administrative order.

{¶ 7}　A more recent case from this court cited by the magistrate highlights the distinction between termination of an established TTD compensation award and the determination of a claimant's request for an initial period of TTD compensation.　In *State ex rel. Huntington Natl. Bank v. Vogt*, 10th Dist. No. 16AP-477, 2017-Ohio-2628, a self-insured employer filed a motion to terminate ongoing TTD compensation that had previously been established by the employer's acquiescence and voluntary payments. Later, at the request of the employer, the claimant was examined by a doctor who opined that the claimant's condition had reached MMI.　Because the claimant's right to TTD compensation had previously been established, the employer filed a motion to terminate the compensation to end the payments.　In addition, the employer wanted the claimant's TTD compensation terminated on the date the claimant was deemed at MMI rather than the date of the termination hearing.　*Vogt* held that the commission correctly applied *Russell* and terminated the claimant's TTD compensation as of the date of the hearing, not the MMI date.

{¶ 8}　Here, in contrast, the claimant's right to TTD compensation had not been established because the DHO's order awarding that compensation was administratively

appealed to a SHO.[1] Consequently, the employer did not need to file a motion to terminate. The claimant's request for an initial period of TTD compensation was before the SHO by virtue of the appeal. Because the SHO's review of the DHO's order is de novo, the SHO considered new evidence not previously before the DHO indicating that relator's allowed condition had reached MMI on August 8, 2019. Therefore, the SHO awarded TTD compensation from April 3 through April 7, 2019, and then from April 9 through the date relator was deemed at MMI—August 8, 2019. We also note that relator does not contest that determination in her objection to the magistrate's decision. Relator only contests the overpayment determination.

{¶ 9}    The magistrate's interpretation of *Russell* is also consistent with the statutory scheme. Where there is a final administrative order, as the SHO's January 16, 2020 overpayment order is here, R.C. 4121.511(K) authorizes the Ohio Bureau of Workers' Compensation to recover that overpayment in the manner described therein. Relator received an overpayment because she received TTD compensation payments from August 8, 2019 (the last day of the final TTD compensation award) through October 29, 2019.

{¶ 10} We recognize that *Russell* found R.C. 4121.511 irrelevant to its analysis. But the issue in *Russell* was *when* an established TTD compensation award can be terminated on the basis of MMI. *Russell* held that an established TTD compensation award cannot be terminated on the basis of MMI until the date of the termination hearing. Therefore, TTD compensation payments received by the claimant prior to the termination hearing were, in essence, not overpayments and could not be recovered because they were paid pursuant to an established administrative order. *Russell* did not prohibit the recovery of TTD compensation payments received by a claimant *after* the end of the period for which TTD compensation was awarded pursuant to a final administrative order. Recovery of such overpayments is expressly authorized by R.C. 4123.511(K).

{¶ 11} Because this case involves the commission's determination of relator's request for an initial period of TTD compensation and not the termination of an established

---

[1] The fact that it was the relator who appealed the DHO order because she objected to the disallowance of certain conditions is of no legal consequence. The appeal places the entire DHO order at issue for de novo review by the SHO.

TTD compensation award, *Russell* is inapplicable. Therefore, we agree with the magistrate that the commission did not err when it determined the overpayment, and we overrule relator's objection.

{¶ 12} Following an independent review of this matter, we find that the magistrate has properly determined the facts and applied the appropriate law. Therefore, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.

*Objection overruled; writ of mandamus denied.*

MᶜGRATH, J., concurs.
DORRIAN, J., dissents.

DORRIAN, J., dissenting.

{¶ 13} I respectfully dissent from the majority. I would sustain claimant's objection to the magistrate's decision, decline to adopt the magistrate's decision, and grant the requested writ of mandamus.

{¶ 14} Because I believe a detailed recitation of the facts and procedural history supports the analysis of applicable law, I provide the same below.

**I. Facts and Procedural History**

{¶ 15} On April 2, 2019, claimant sustained an injury when pushing/stopping carts in the welding department of respondent Jefferson Industries Corporation ("employer"). Claimant was treated at an emergency room and an emergency physician diagnosed her with lumbar strain, instructed her to engage in sedentary-duty work until rechecked, and referred her to follow-up with occupational medicine. Jessica N. Ward, APRN-CNP, examined claimant on April 4, 2019 and certified temporary total disability ("TTD") for lumbar strain from April 4, 2019 with an estimated return-to-work date of April 8, 2019. Claimant returned to restricted duty work on April 8, 2019, but worked less than two hours before back pain forced her to stop working and she returned to the emergency department. She visited the emergency department on three other occasions related to the lumbar pain.

{¶ 16} On April 18, 2019, the Ohio Bureau of Workers' Compensation ("BWC") allowed the claim for lumbar sprain/strain. The employer appealed.

{¶ 17} Claimant filed C-84 requests for TTD compensation on April 18, June 6, June 21, July 23, and October 29, 2019. Claimant also requested the allowance of two other claims, disc displacement and annular tear.

{¶ 18} On April 11, 2019, Adam C. Edge, D.C., examined claimant and certified TTD for lumbar sprain/strain from April 2, 2019 to an estimated return-to-work date of April 25, 2019. Dr. Edge again examined claimant on April 24, 2019 and certified TTD for lumbar sprain/strain from April 2 to May 10, 2019. Dr. Edge again examined claimant on May 21, 2019 and certified TTD for lumbar sprain/strain from May 10 to July 30, 2019. Dr. Edge again examined claimant on July 24, 2019 and certified TTD for lumbar sprain/strain from July 31 to October 30, 2019. Dr. Edge again examined claimant on October 29, 2019 and certified TTD for lumbar sprain/strain from October 31 to December 31, 2019. The MEDCO-14 forms included a question regarding whether claimant had reached maximum medical improvement ("MMI"). Dr. Edge indicated expressly that claimant either had not reached MMI or there was no update to the question. (*See* MEDCO-14 forms filed by Dr. Edge on April 12, May 1, June 21, July 25, and October 29, 2019.) Also included in the record are daily progress notes from varying dates beginning April 2 through July 24, 2019, and one from October 29, 2019. The daily progress notes form included a box to check if the patient was at MMI and another box to check if the patient was approaching MMI. These boxes were left unchecked on each progress note filed.

{¶ 19} The case was set for hearing on the employer's appeal before a district hearing officer ("DHO") on June 13, 2019. At the hearing, the DHO made several determinations. The DHO issued an order on June 18, 2019. The order indicates it was heard pursuant to the provisions of R.C. 4121.34 and 4123.511 on the appeal filed by the employer from the BWC's April 18, 2019 order. The order lists the issue as "[i]njury [o]r [o]ccupational [d]isease [a]llowance." The DHO allowed the claim for lumbar sprain/strain and on that allowed claim ordered TTD compensation to be paid for a closed period from April 3 through April 7, 2019, inclusive, and then from April 9 through May 9, 2019, and to continue with the submission of supporting medical proof. The DHO expressly found the lumbar sprain/strain claim had not reached MMI. The DHO also disallowed claimant's claims for disc displacement and annular tear.

{¶ 20} Claimant appealed. Notwithstanding that the employer initially appealed to the DHO the BWC's initial allowance of lumbar sprain/strain claim, the employer did not appeal the DHO's order which allowed the same claim and awarded TTD compensation based on the same claim. The case was set for a hearing on claimant's appeal before a staff hearing officer ("SHO").

{¶ 21} Claimant began receiving TTD compensation pursuant to the DHO's order while the appeal to the SHO was pending.

{¶ 22} On August 21, 2019, prior to the hearing before the SHO, independent medical examiner ("IME") Gerald S. Steiman, M.D., issued a report based on an examination he conducted on August 8, 2019 at the request of the employer. Dr. Steiman opined that claimant had reached MMI for the allowed condition of lumbar sprain/strain. Earlier, on May 9, 2019, Dr. Steiman examined claimant at the request of the employer as well, and found claimant had not reached MMI on the lumbar sprain/strain claim.

{¶ 23} The SHO conducted a hearing on October 28, 2019 and issued an order on November 2, 2019. The order indicates it was heard pursuant to the provisions of R.C. 4121.35(B) and 4123.511(D) on the appeal filed by claimant of the DHO's June 18, 2019 order. The order lists the issue as "[i]njury [o]r [o]ccupational [d]isease [a]llowance." Relevant here, the SHO modified the DHO's order. The SHO found the lumbar sprain/strain claim was allowed and TTD compensation awarded for the lumbar sprain/strain from April 3 through April 7, 2019, and from April 9 through August 8, 2019. The SHO found claimant had reached MMI on the lumbar sprain/strain claim on August 8, 2019, the date of Dr. Steiman's examination, and ordered that TTD compensation was to terminate effective August 8, 2019. The SHO disallowed the disc displacement and annular tear claims. Claimant appealed but the commission refused the appeal on November 21, 2019.

{¶ 24} Thereafter, on November 4, 2019, the BWC sought recoupment of $5,549.40 of TTD compensation overpaid between August 8 and October 29, 2019. Claimant appealed to the commission. A DHO heard the appeal on December 9, 2019 and on December 12, 2019 issued an order in which it determined that TTD remained overpaid for the period as set forth in the BWC's November 4, 2019 order. The DHO indicated the finding was based on the BWC overpayment worksheet dated November 4, 2019, and the

"[SHO's] decision issued 11/02/2019, which became a final administrative order." (Stip. at 184.) Claimant appealed and an SHO heard the appeal. On January 16, 2020, the SHO affirmed the DHO's December 12, 2019 order and found the overpayment as previously assessed by the BWC order dated November 4, 2019 was to remain as is. The SHO reasoned:

> The claimant argued that the [SHO] order of 10/2[8]/2019, which terminated [TTD] compensation as of 08/08/19 based on a report from Gerald Steiman, M.D. secondary to an examination of the claimant be performed on that date, was wrong to terminate compensation at that time instead of the date of that hearing. The claimant cited to Hearing Officer Memo D2[2] in support of its argument. The [SHO] rejects this argument finding the [SHO] was able to terminate [TTD] compensation in the manner he did based upon the evidence before him because the issue before him was allowance including a request for an initial period of compensation. Under those circumstances, the SHO was not limited by D2.

(Stip. at 186.)    Claimant appealed but the commission refused further appeal on February 6, 2020. Claimant requested reconsideration. The commission indicated the issues on reconsideration were continuing jurisdiction pursuant to R.C. 4123.52 and overpayment. The commission denied the request for reconsideration on May 9, 2020.

---

[2] Memo D2 is not included in the record. However, I would take judicial notice that the BWC Memo D2 is contained in the Ohio Industrial Commission publication *Adjudications Before The Ohio Industrial Commission*. Memo D2 is titled Jurisdiction over the Issue of Maximum Medical Improvement and states:

> In order for a hearing officer to proceed on the issue of maximum medical improvement, it is necessary that temporary total disability be an issue in the claim.

> A hearing officer has the ability to proceed on the issue of maximum medical improvement when the injured worker is on temporary total disability compensation, or is requesting temporary total disability compensation, at the time a party files a request that the injured worker be found to have reached maximum medical improvement; and/or at the time of the hearing. A hearing notice that lists temporary total and/or termination of temporary total as issues to be heard is sufficient to allow a hearing officer to address maximum medical improvement.

> When terminating ongoing temporary total disability compensation due to a finding of maximum medical i8mprovement, temporary total disability compensation shall be paid through the date of the hearing at which the compensation is being terminated.

> **NOTE**: State ex rel. Russell v. Indus. Comm., 82 Ohio St.3d 516, 696 N.E. 2d 1069 (1998).

https://www.ic.ohio.gov/about-ic/resource-library/resource-pdfs/adjudications-before-oic.pdf (accessed Dec. 29, 2022).

Claimant filed the instant mandamus action asking the court to direct the commission to vacate its orders declaring an overpayment of $5,549.40 and to issue a new order dissolving said overpayment.

## II. The Issue: What is the Correct Effective Date of Termination of TTD Compensation in this Case?

{¶ 25} The question before this court is: *what is the correct effective date of termination of TTD compensation in this case where the commission's prior order of continuing TTD is not a final administrative order but where the allowed claim on which TTD compensation is based is ultimately administratively affirmed?* The commission applied an effective date of termination which coincided with the date the IME, Dr. Steiman, determined claimant had reached MMI ("MMI date"), August 8, 2019, which preceded the October 28, 2019 date of the hearing before the SHO ("SHO hearing date" or "hearing date"), October 28, 2019, on claimant's appeal of the DHO's order which disallowed two claims, allowed a claim for lumbar sprain/strain, and granted TTD compensation based on the lumbar sprain/strain claim on the continued submission of supporting medical proof. Claimant argues the effective date of termination should be the SHO's hearing date because she had submitted supporting medical proof of continued TTD through the date of the hearing which disputed Dr. Steiman's finding of MMI. In support, claimant points to *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516 (1998).

{¶ 26} Claimant requests the writ of mandamus be granted to compel the commission to dissolve the existing overpayment. Claimant specifically objects to the magistrate's conclusion that she had not "established" her right to TTD compensation and the magistrate's implication that the term "established" "necessitates either a final order from the Industrial Commission or a self-insured employer's acceptance of responsibility to issue indemnity payments." (Claimant's Obj. at 3.) Claimant argues *Russell* is applicable to the instant case because the DHO's order in the case before us is a prior order from which claimant was receiving ongoing TTD compensation and claimant continued to submit supporting medical proof of TTD from her attending physicians. According to claimant, "[t]hese are the only 'conditions precedent' necessary to mandate the compensation be terminated as of date of hearing." (Claimant's Obj. at 4, citing *Russell* at 521.)

{¶ 27} The commission argues in response that the magistrate did not err. The commission reasons:

> The SHO did not terminate TTD based on a motion for an MMI finding. Instead, the SHO simply awarded a closed period of TTD that ended on a date prior to the hearing date because the issue was still the initial entitlement to TTD, not the on-going entitlement to TTD by final order. There was never any final order that granted her the right to receive on-going, continual payments of TTD.
>
> The commission District Hearing Officer ("DHO") order awarded Dillon the *provisional* right to receive on-going TTD benefits, but that order was the subject of a timely appeal. The listed issue before the DHO was the original allowance of the claim, which encompassed the compensability of her claim injuries and conditions.
>
> * * *
>
> Here the DHO found TTD payable for a closed period from April 3 to April 7, 2019, and then open-ended period from April 9 to May 9, 2019 and to continue upon submission of competent medical proof.
>
> However, that order never became final because an appeal was timely filed by Dillon herself as to the disallowance of several more significant conditions [and] [b]y filing her appeal, it legally rendered the DHO's findings provisional. The SHO hearing is de novo [and] [t]he SHO was free to affirm, vacate, or modify any or all of the DHO's findings.

(Emphasis sic.) (Commission's Memo Contra Obj. at 5-7.)

### III. Analysis of *Russell*

{¶ 28} In *Russell*, the claimant was injured on August 13, 1992 and a claim was allowed for lumbar strain. The claimant received TTD compensation on the lumbar strain claim until May 8, 1994. On October 24, 1994, a DHO allowed another claim for dysthymia, DSM III secondary type and TTD was resumed. The claimant's attending physician continued to submit proof of TTD. An IME examined the claimant and opined the claimant had reached MMI on March 23, 1995. Based on the IME's report, the BWC filed a request to terminate TTD. On July 24, 1995, a DHO held a hearing and found the claimant had reached MMI on March 23, 1995 and terminated TTD as of March 23, 1995. The DHO's

order was administratively affirmed. An overpayment of TTD subsequent to March 23, 1995 was declared. The claimant filed a request for writs of mandamus and prohibition. The Supreme Court of Ohio granted the writs declaring the claimant had a clear legal right to those funds that the commission had declared an overpayment.

{¶ 29} *Russell* held: "The appropriate date on which to terminate *disputed* [TTD] compensation on the basis of maximum medical improvement is the date of the termination hearing, and the commission may not declare an overpayment for payments received by the claimant before that date." (Emphasis added.) *Id.* at syllabus. The Supreme Court further held as follows:

> This court has unwaveringly held (1) that continuing TTD compensation may not be terminated prior to a hearing before a commission hearing officer so long as *claimant's attending physician* continues to certify TTD, (2) that the hearing officer may not terminate the claimant's TTD retroactive to a date prior to the date of the hearing, (3) that claimant is entitled to all compensation paid to the date of the hearing, and (4) that any eventual discounting of the attending physician's reports certifying TTD does not transform those payments into a recoupable overpayment. *State ex rel. MTD Products, Inc. v. Indus. Comm.* (1996), 76 Ohio St.3d 593, 669 N.E.2d 846; *State ex rel. Crabtree v. Ohio Bur. of Workers' Comp.* (1994), 71 Ohio St.3d 504, 644 N.E.2d 361; *AT & T Technologies, Inc. v. Indus. Comm.* (1993), 68 Ohio St.3d 55, 623 N.E.2d 63; *State ex rel. Jeep Corp. v. Indus. Comm.* (1991), 62 Ohio St.3d 64, 577 N.E.2d 1095; *State ex rel. McGinnis v. Indus. Comm.* (1991), 58 Ohio St.3d 81, 568 N.E.2d 665; *State ex rel. Youghiogheny & Ohio Coal Co. v. Kohler* (1990), 55 Ohio St.3d 109, 564 N.E.2d 76.
>
> * * *
>
> In this case, claimant was receiving [1] ongoing TTD compensation[3] [2] pursuant to a prior order, and [3] continued to submit proof of TTD from his [4] attending physician.[4] *This fulfills all conditions precedent to the payment of compensation and establishes claimant's entitlement to all payments at the time they were received, despite the existence of contrary evidence. MTD Products*, 76 Ohio St.3d at 595, 669 N.E.2d at 848; *Crabtree*, 71 Ohio St.3d

---

[3] I note, in the present case the commission does not challenge that the TTD compensation was ongoing.
[4] I note, in the present case the commission does not challenge that claimant continued to submit proof of TTD from his attending physician.

at 508, 644 N.E.2d at 365; *AT & T*, 68 Ohio St.3d at 57-58, 623 N.E.2d at 65; *Jeep Corp.*, 62 Ohio St.3d at 66, 577 N.E.2d at 1097; *McGinnis*, 58 Ohio St.3d at 83, 568 N.E.2d at 667.

\* \* \*

The claimant is entitled to continuing TTD payments until they are terminated at hearing precisely because he has fulfilled the eligibility requirements. "The bureau *must* pay TTD compensation if all conditions precedent are met. Thus, if the commission order makes payment contingent on proof of disability and the claimant tenders such evidence, the bureau must continue compensation regardless of the existence of contrary evidence." (Emphasis *sic*.) *Crabtree*, 71 Ohio St.3d at 508, 644 N.E.2d at 365. In this case, TTD compensation was previously awarded and the claimant continued to offer proof of TTD from his attending physician. This fulfills all the "eligibility criteria" for the payment of compensation and establishes claimant's entitlement to all payments received.

(Emphasis added.)  *Id*. at 519-22.

{¶ 30} In *Russell*, the Supreme Court analyzed and relied on R.C. 4123.56 to support its holding that the hearing date was the effective date. The portion of R.C. 4123.56[5] which *Russell* analyzed, states:

In the case of a self-insuring employer,[6] payments shall be for a duration based upon the medical reports of the attending physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer pursuant to *division (C) of section 4123.511 of the Revised Code*. Payments shall continue pending the determination of the matter, however payment shall not be made for the period when any employee has returned to work, when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, when work within the physical capabilities of the employee is made available by the employer or another employer, or when

---

[5] A comparison of the relevant portion of R.C. 4123.56 in effect at the time *Russell* was decided and the version in effect now reveals only non-substantive amendments.
[6] *Russell* explained in a footnote that "the provisions of R.C. 4123.56 governing the termination of TTD payments apply to the bureau in State Fund claims as well as to self-insuring employers." *Id*. at fn. 1. *Russell* involved a state-fund employer.

the employee has reached the maximum medical improvement.

(Emphasis added.) Elaborating on its reliance on R.C. 4123.56, the *Russell* court rejected the dissent's focus on and interpretation of the language "however[,] payment shall not be made for the period in which any employee has * * * reached the maximum medical improvement." *Id.* at 522. The majority explained:

> This language relates to the issue of unilateral termination and applies 'only when there is *no dispute* as to whether the employee has reached maximum medical improvement' *Crabtree*, 71 Ohio St.3d at 509-510, 644 N.E.2d at 366. Otherwise, 'payments shall be for a duration based upon the medical reports of the *attending* physician. If the employer disputes the attending physician's report, payments may be terminated only upon application and hearing by a district hearing officer * * *'. R.C. 4123.56(A). * * * [T]he employer who successfully challenges the attending physician's report is not entitled to a termination of TTD compensation retroactive to the date MMI was diagnosed by the nonattending physician."

(Emphasis added.) *Id.*

{¶ 31} As noted above, claimant here argues *Russell* does not require a final order from the commission for the effective date of termination of TTD compensation to be the hearing date. Instead, claimant argues, *Russell* requires only a "prior order," and this criteria is met by the DHO's June 18, 2019 order awarding TTD compensation for lumbar sprain/strain. *Id.* at 521.

{¶ 32} The commission argues, however, that *Russell* does not apply as the June 18, 2019 DHO order "was a de novo order to the original allowance of the claim and not an order seeking termination of a previously established right to ongoing TTD compensation." (Commission's Memo Contra Obj. at 2.) Claimant's appeal of the DHO's order rendered it not a final order and therefore, according to the commission, *Russell* does not apply. The majority agrees with the commission's analysis of *Russell* and ultimately holds it does not apply to the case before us as the issue before the commission was not the termination of an established TTD award, but the determination of a claimant's request for an initial period of TTD compensation.

{¶ 33} The facts in *Russell* indicate the DHO's October 24, 1994 order allowed the claim for dysthymia and ordered the resumption of TTD compensation. There is no indication whether this order was administratively appealed and therefore it could be inferred that the order became final.[7] Nevertheless, in its analysis of the issue, neither the majority, the concurrence, nor the dissent mention or focus on this. Rather, as noted above, the analysis and holding was based on the court's interpretation of R.C. 4123.56 and precedent interpreting the same.

{¶ 34} The majority notes that its interpretation of *Russell* is consistent with the statutory scheme outlined in R.C. 4121.511. However, the Supreme Court expressly stated in *Russell* that "[t]he question of claimant's entitlement to receive ongoing TTD compensation until a hearing officer rules otherwise is governed by R.C. 4123.56, *not* 4123.511([K])." (Emphasis added.) *Id*. at 521. R.C. 4123.511(K)[8] expressly states "[u]*pon the final administrative or judicial determination under this section or section 4123.512 [4123.51.2] of the Revised Code* of an appeal of an order to pay compensation, if a claimant is found to have received compensation pursuant to a prior order which is reversed upon subsequent appeal, the claimant's employer, if a self-insuring employer, or the bureau, shall withhold from any amount to which the claimant becomes entitled pursuant to any claim, past, present, or future, under Chapter 4121., 4123., 4127., or 4131. of the Revised Code, the amount of previously paid compensation to the claimant which, due to reversal upon appeal, the claimant is not entitled, pursuant to the * * * criteria [set forth herein]." (Emphasis added.) In contrast, R.C. 4123.56 does *not* specify the requirement of a "final administrative or judicial determination."

{¶ 35} Finally, the reasoning set forth in *Russell* to support the holding that the hearing date is the effective date of termination of TTD logically applies as well to TTD

---

[7] I note that *Russell* indicates the DHO's July 24, 1995 order, which found MMI had been reached and terminated TTD effective the MMI date was administratively affirmed. However, the DHO's July 24, 1995 order is not the prior order pursuant to which the claimant was receiving TTD compensation. The DHO's October 24, 1994 order was the prior order. I also note that *Russell* also quotes the December 18, 1995 and February 19, 1996 orders which read in relevant part "[t]his order is a final administrative order, and is therefore not appealable or subject to reconsideration." *Russell* at 517. However, these orders were not the prior order pursuant to which the claimant was receiving TTD, but rather the overpayment recoupment orders. The question before this court is whether the prior order pursuant to which the claimant was receiving TTD compensation must be a final order in order for *Russell* to apply.

[8] Comparison of R.C. 4123.511(K), formerly R.C. 4123.511(J), the version in effect at the time *Russell* was decided and the version in effect now reveals no relevant substantive changes.

awards made pursuant to prior orders which are not final when the claim allowance on which the TTD award was based becomes final either because it was not appealed, was administratively affirmed, or was allowed pursuant to an R.C. 4123.512 appeal. Here, the allowed claim on which the continuing TTD award was based, lumbar sprain/strain, was administratively affirmed by the SHO in the November 2, 2019 order after the October 28, 2019 hearing.

{¶ 36} To qualify for TTD compensation, a claimant must demonstrate that he or she is medically unable to work as a result of the allowed conditions of the claim. *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 146 Ohio St.3d 259, 2015-Ohio-5224, ¶ 11, citing *State ex rel. Floyd v. Formica Corp.*, 140 Ohio St.3d 260, 2014-Ohio-3614, and *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, ¶ 35. This requires some medical evidence that the disability period is caused by an allowed medical condition. *Id.*, citing *State ex rel. Standerfer v. Indus. Comm.*, 10th Dist. No. 07AP-930, 2008-Ohio-3947, ¶ 19. "It is undisputed that an award of TTD compensation cannot be based on non-allowed conditions." *State ex rel. Brown v. Indus. Comm.*, 10th Dist. No. 15AP-909, 2016-Ohio-7007, appended magistrate's decision, citing *State ex rel. Chrysler Corp. v. Indus. Comm.*, 81 Ohio St.3d 158 (1998). Accordingly, the commission's argument in support of an effective date of termination as the MMI date would make sense only if the allowance on which TTD compensation is based is ultimately disallowed. Here, however, the allowance on which TTD compensation was based was administratively affirmed by the SHO in the November 2, 2019 order.

{¶ 37} *Russell* reasoned:

> To say that under R.C. 4123.511([K]) a claimant must repay compensation to which he or she was not entitled begs the question of whether claimant was entitled in the first place to receive such compensation.
>
> In this case, claimant was receiving ongoing TTD compensation pursuant to a prior order, and continued to submit proof of TTD from his attending physician. This fulfills all conditions precedent to the payment of compensation and establishes claimant's entitlement to all payments *at the time they were received*, despite the existence of contrary evidence. * * * *A termination order does not negate the previous order pursuant to which compensation has been paid; it does not, and could not, change the eligibility requirements for the*

> *payment of compensation.* Simply put, this is not a situation to which R.C. 4123.511([K]) applies.
>
> * * *
>
> [As stated in the dissent] 'Ineligibility is the key to the right to recoupment. The payment of continued benefits pending a hearing to determine eligibility does not equate with eligibility.'
>
> The claimant is entitled to continuing TTD payments until they are terminated at hearing precisely because he has fulfilled the eligibility requirements. "The bureau *must* pay TTD compensation if all conditions precedent are met. Thus, if the commission order makes payment contingent on proof of disability and the claimant tenders such evidence, the bureau must continue compensation regardless of the existence of contrary evidence." (Emphasis sic.) * * * In this case, TTD compensation was previously awarded and the claimant continued to offer proof of TTD from his attending physician. This fulfills all the 'eligibility criteria' for the payment of compensation and establishes claimant's entitlement to all payments received.

(Emphasis added.) *Russell* at 521-22. Here, the SHO's October 28, 2019 order, which terminated TTD based on a finding of MMI, did not negate the previous June 18, 2019 DHO's order pursuant to which TTD compensation had been paid. The SHO's order affirmed the allowance of the claim of lumbar sprain/strain—the claim on which TTD was based and the award of TTD compensation. Although the SHO relied on Dr. Steiman's finding that MMI had been reached on August 8, 2019 to terminate TTD effective the same day, the SHO's finding did not nullify the MEDCO-14 reports that Dr. Edge filed certifying continuing TTD through October 30, 2019. The SHO's November 2, 2019 order did not change the eligibility requirements for claimant's receipt of continuing TTD compensation. The eligibility requirements were met and therefore, according to *Russell*, claimant was entitled to all payments at the time they were received, despite the existence of contrary evidence in the form of Dr. Steiman's finding of MMI on August 8, 2019.

{¶ 38} I would agree with claimant that *Russell* does not require a final administrative order from the commission in this case. Notably, *Russell* did not address whether the "prior order" must be a final administrative order. *Id.* at 521. Rather, I would find that when the allowed claim on which TTD compensation is based ultimately is

administratively affirmed, the appropriate date to terminate disputed TTD compensation on the basis of MMI is the date of the termination hearing as long as there is a: (1) "prior order" from the commission (2) of ongoing TTD compensation (3) and continued submission of proof of TTD (4) from the claimant's attending physician. *Id*. In such instance, I would find the commission may not declare an overpayment for payments received by the claimant before that date.

{¶ 39} All these criteria have been met in this case. Dr. Steiman's finding of MMI on August 8, 2019 is disputed by the MEDCO-14 forms filed by Dr. Edge certifying TTD through October 30, 2019. The June 18, 2019 DHO order is the prior order establishing TTD compensation payments for the allowed condition of lumbar sprain/strain. Claimant was receiving ongoing TTD compensation from April 9 through May 9, 2019 to continue with the submission of supporting medical proof. Claimant's attending physician, Dr. Edge, continued to submit proof of TTD through October 30, 2019. Furthermore, the allowed claim on which the disputed continuing TTD was based, lumbar sprain/strain, and the award of TTD compensation were ultimately administratively affirmed by the SHO's November 2, 2019 order following the October 28, 2019 hearing.

## IV. Analysis of *State ex rel. Huntington Natl. Bank v. Vogt*, 10th Dist. No. 16AP-477, 2017-Ohio-2628

{¶ 40} Claimant further argues the magistrate erred in applying *Vogt* in support of the conclusion that the commission did not err in terminating TTD compensation on the MMI date. Specifically, claimant argues the magistrate misconstrues the term "established" as it should apply in the case before us. Claimant further argues *Vogt* does not stand for the proposition that *Russell* specifically requires a final administrative order of TTD compensation for a termination date to be effective on a hearing date.

{¶ 41} Here, the magistrate stated "this court made apparent in *Vogt*, *Russell* applies when 'entitlement' to TTD compensation has been 'established.' In *Vogt*, TTD compensation was 'established' because the employer did not dispute the request for TTD and voluntarily paid it.9 * * * [I]n the present case, claimant's 'entitlement' to TTD compensation had not been 'established.' Although payment of TTD compensation had

---

9 As noted in the discussion of my facts and procedural history, although the employer in the case before us appealed the BWC's initial allowance of the lumbar sprain/strain claim, the employer did not appeal the DHO's June 18, 2019 order affirming the allowance and ordering continuing TTD based on the same claim.

begun pursuant to the DHO's order, claimant appealed the order, and no final entitlement to TTD was established until the SHO issued its order and further appeals were exhausted." (Appended Magistrate's Decision at ¶ 83-84.)

{¶ 42} The majority opines that *Vogt* supports the application of *Russell* only in cases involving termination of an established TTD award rather than the determination of a claimant's request for an initial period of TTD compensation. I however would agree with claimant that the magistrate misconstrues the term "established" as it should be applied in this case. In *Vogt*, this court observed that "the magistrate found that Vogt's entitlement to TTD compensation had been *established* and that Huntington voluntarily paid the TTD benefits on an ongoing basis without the commission ordering such payment." (Emphasis added.) *Id.* at ¶ 16. In *Vogt*, the self-insured employer[10] ("Huntington") certified a claim for a head laceration and began paying compensation to the claimant. The claimant's attending physician completed a C-84 requesting TTD compensation and continuing TTD compensation based on the head laceration. The claimant then filed a C-86 motion requesting additional allowed claims. Huntington continued paying TTD compensation. The claimant was examined by a second examining physician who considered whether the claimant's request for additional claims should be allowed. The physician opined they should not be allowed and further opined the allowed condition of head laceration had reached MMI. Huntington then filed a motion seeking to terminate the claimant's TTD compensation based on the finding of MMI by the second examining physician. The claimant's and Huntington's motions were heard by a DHO. The DHO denied the allowance of additional claims. The DHO further found to be persuasive the second examining physician's finding of MMI as to the allowed head laceration claim and terminated TTD compensation. Relying on *Russell*, the DHO imposed an effective date of termination of TTD compensation as of the hearing date. The claimant and Huntington appealed and an SHO heard the appeal. The SHO likewise disallowed the additional claims

---

[10] Vogt was an employee of a self-funded employer; whereas, in this case claimant is an employee of a state-fund employer. This distinction is irrelevant for purposes of this discussion because, as noted previously, the common procedural fact in *Vogt* and here is that there was an established allowed claim on which TTD compensation was based. Furthermore, in *Russell*, the Supreme Court noted in a footnote that self-insured cases on this topic apply as well to state fund claims and "that the provisions of R.C. 4123.56 governing the termination of TTD payments apply to the bureau in state fund claims as well as to self-insuring employers." *Russell* at fn. 1.

and terminated TTD compensation based on the head laceration allowed claim. The SHO rejected Huntington's arguments for an earlier termination date and imposed an effective date of termination as of the DHO hearing date relying on *Russell.* The commission refused both parties appeals. Huntington filed a request for a writ of mandamus asking this court to impose an earlier effective date of termination.[11] The magistrate recommended this court deny Huntington's request. This court adopted the magistrate's reasoning that:

> Claimants present medical evidence that, due to the allowed conditions in their claim, they are unable to return to their former position of employment. Once the commission finds the claimant's evidence to be persuasive, TTD compensation is awarded and paid while the claimant's treating physician continues to submit medical documentation of ongoing disability. Often an employer will have a claimant examined by another physician to determine whether or not the allowed conditions in the claim have reached MMI. If a physician opines that they have, the employer files a motion to terminate the compensation, and the matter is set before the commission for a hearing since there is conflicting medical evidence in the record. At the time of the hearing, should the commission find the evidence that the allowed conditions have reached MMI persuasive, TTD compensation is terminated effective the date of that hearing. Were it otherwise, claimants would find themselves in the untenable position of having to pay back compensation which they believed they were rightfully entitled to, and which they have been using to pay their own expenses.
>
> In the present case, relator began paying claimant TTD compensation without an order from the commission ordering such payment. Relator, a self-insured employer, voluntarily paid compensation to claimant without requiring the claimant to file a motion with the commission. This in no way changes the fact that claimant was entitled to the TTD compensation and was being paid that compensation by relator. Claimant's medical evidence of continuing disability was submitted to relator's third-party administrator and benefits continued to be paid. It was not until June 2015 that relator had claimant examined by another physician who found that the allowed condition had reached MMI. Relator cannot use this report or a statement in an office note by relator's treating physician dated January 5, 2015 indicating that her head laceration was healed to change the well-settled law. Inasmuch as there is no

---

[11] Huntington sought a date of termination based on a note in the attending physician's report that the head laceration was healed. This date was even prior to the second examining physician's date of MMI.

allegation of fraud on the part of the claimant, to the extent that relator now wishes it would have paid more attention or had claimant examined before June 2015, the commission did not abuse its discretion by applying the law from *Russell* and terminating claimant's TTD compensation effective September 17, 2015, the date of the hearing before the DHO.

*Vogt* at ¶ 43-44.

**{¶ 43}** I disagree with the magistrate's and the majority's conclusion that our holding in *Vogt* supports an effective termination date of TTD compensation as the MMI date in the case before us now. To the contrary, although not exactly on point procedurally, if anything, *Vogt* appears to support claimant's argument that the effective TTD compensation termination date should be the SHO's hearing date, not the MMI date. In *Vogt*, TTD was "established" by Huntington's self-insured certification of a claim and voluntary payment of TTD. Here, TTD was "established" by the affirmed allowance of the lumbar sprain/strain and claimant's attending physician's submission of continued medical proof of TTD pursuant to the prior DHO June 18, 2019 order. All the conditions precedent to the payment of compensation were fulfilled and therefore claimant's entitlement to all TTD payments at the time they were received was established, despite the existence of contrary evidence. As in *Vogt*, here the effective date of termination of TTD compensation payments should be the date of the SHO hearing.

## V. Analysis of *State ex rel. Byrd v. Venture Lighting Internatl., Inc.*, 10th Dist. No. 02AP-1310, 2003-Ohio-5578

**{¶ 44}** The majority also opines that *Byrd* and *State ex rel. Youngstown Hosp. Assn. v. Indus. Comm.*, 10th Dist. No. 98AP-1630 (Dec. 14, 1999), support the application of *Russell* only in cases involving termination of an established TTD award rather than the determination of a claimant's request for an initial period of TTD compensation. Again, I respectfully disagree.

**{¶ 45}** I would find *Byrd* to be of limited precedential value and not applicable here for the reasons I have previously explained in my analysis of *Russell* and because: (1) the procedural facts in *Byrd* differ from the procedural facts herein, (2) the objection raised to the magistrate's decision in *Byrd* was the denial of TTD, not the effective date of termination of ongoing TTD, and (3) research reveals and the commission has pointed us to no subsequent reliance on *Byrd*.

{¶ 46} In *Byrd*, the relator-claimant made two separate claims for carpal tunnel, one claim for her right hand/wrist and one claim for her left hand/wrist. The claim for the right hand/wrist was allowed in 1998 and carpal tunnel surgery was performed on her right hand/wrist in 2000; however, it does not appear the claimant initially requested TTD compensation for the right hand/wrist. In 1999, the claim for the left hand/wrist was allowed and the claimant requested and began receiving TTD compensation related to her left hand/wrist. The claimant received TTD compensation related to her left hand/wrist through April 27, 2002. On May 10, 2002, the claimant filed a C-84 form seeking TTD compensation for her right hand/wrist from April 27, 2002 through an estimated return-to-work date of July 15, 2002. The BWC granted the claimant's TTD request for the right hand/wrist and the employer appealed.

{¶ 47} Prior to a hearing before a DHO, the claimant was examined by an IME. The IME issued a report indicating he had examined the claimant's right hand on May 14, 2002 and that MMI had been met with regard to the right hand/wrist. The IME found substantial evidence of symptom misrepresentation to the point of malingering. The claimant's treating physician submitted an additional report concluding MMI had not been reached and that the claimant had only started therapy on her right wrist in May 2002. The DHO denied the claimant's request for TTD based on the IME's report. Upon further appeal, the SHO also denied the claimant's requested period of TTD compensation. The claimant sought a writ of mandamus to order the commission to award her TTD. In support, the claimant argued that: (1) the SHO's reliance on the IME's report to deny TTD was improper and the SHO should have relied on the claimant's treating physician's report, and (2) the SHO's denial of TTD violated *Russell*. A magistrate of this court rejected both arguments and recommended denial of the writ. In rejecting the claimant's argument related to *Russell*, the magistrate held:

> This court has held that *Russell* only applies to an ongoing award of TTD compensation which is subsequently terminated and does not apply to a motion requesting the commencement of TTD compensation. See, e.g., *State ex rel. Youngstown Hosp. Assoc. v. Indus. Comm.* (Dec. 14, 1999), Franklin App. No. 98AP-1630.
>
> In the present case, the commission denied relator's application for the commencement of TTD compensation in

> part based upon the conclusion of Dr. Ungar that she had reached MMI. Because the commission was not using the date of Dr. Ungar's report to terminate TTD compensation, *Russell* has not been violated.
>
> As stated previously, the commission denied relator's request for TTD compensation because she had failed in her burden of proof and because Dr. Ungar had opined that she had reached MMI. This magistrate finds that relator's arguments challenging the commission's order lack merit.

*Byrd* at ¶ 41-43. The claimant filed an objection claiming only that "the magistrate erred in finding the commission's denial of temporary total disability compensation was not an abuse of discretion." *Id*. at ¶ 3. This court adopted the magistrate's decision. *Byrd* is easily distinguished from the case before us in that there is no prior order of the commission ordering TTD compensation for the right hand/wrist; whereas, in the case before us the DHO's June 18, 2019 order was a prior order granting continuing TTD compensation. The objection in *Byrd* was to the magistrate's finding that the commission did not err in denying TTD outright. Furthermore, in *Byrd*, the employer specifically appealed the BWC's order of TTD compensation; whereas, in this case the employer did not appeal the DHO's June 18, 2019 order awarding TTD compensation. Finally, my research has revealed no subsequent reliance on *Byrd* and the commission has pointed us to none. Thus, I would find the commission's reliance on *Byrd* in support of its argument is misplaced and I would not find *Byrd* dispositive or persuasive to resolution of the issue regarding the effective date of termination of TTD in this case.

{¶ 48} I also would not find *Youngstown Hosp*. to be controlling or persuasive. In 2001, in *State v. Gillman*, 10th Dist. No. 01AP-662 (Dec. 13, 2001), this court stated: "[A]s a rule, this court does not use a memorandum decision as authority, and it has no binding precedential value. S.Ct.R.Rep.Op. 2(C) and 2(G)(1)." (Internal citations omitted.) *See also State ex rel. Green Tokai Co., Ltd. v. Indus. Comm.*, 10th Dist. No. 06AP-642, 2007-Ohio-4688, ¶ 7 (finding the "relator's reliance" on a memorandum decision of this court "unconvincing," as memorandum decisions "have no binding precedential value"). Subsequently, the Supreme Court amended the Rules for the Reporting of Opinions. Now, Rule 3.4 of the Rules for the Reporting of Opinions states: "All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighted as deemed

appropriate by the courts without regard to whether the opinion was published or in what form it was published." *Youngstown Hosp.* was decided December 14, 1999, prior to the modification of Rule 3.4 and prior to May 1, 2002. It was released as an unpublished memorandum decision, thus having no binding precedential value. Furthermore, review of the commission's publication Adjudications Before The Ohio Industrial Commission, Section D, regarding Temporary Total Disability, does not refer to *Youngstown Hosp.* as authority to distinguish and apply *Russell* only to cases involving prior orders of the commission which have become final. Therefore, it does not appear the commission internally relies on *Youngstown Hosp.* (There is no reference to *Youngstown Hosp.* whatsoever. Nor is there a reference to *Byrd* or *Vogt*. And, notably, there is no direction or instruction that *Russell* should only be applied to cases involving prior orders of the commission that have become final.) Finally, research reveals and the commission has pointed to no subsequent reliance on *Youngstown Hosp.* in case law. Therefore, in light of my detailed analysis and application of *Russell* herein, I would accord no precedential weight to *Youngstown Hosp.*

**VI. The Nature of Administrative Appeal in the Present Case**

{¶ 49} I have a final observation regarding the nature of the administrative appeal in this case. I note the November 2, 2019 SHO's order addressing the June 18, 2019 DHO's order indicated that the issue before it was "Injury Or Occupational Disease Allowance." (Stip. at 180.) I also note the January 16, 2020 order affirming the BWC's recoupment order observed "the [SHO] was able to terminate temporary total disability compensation in the manner he did based upon the evidence before him because the issue before him was allowance including a request for an initial period of compensation." (Stip. at 186.) I cannot verify these characterizations of the issue on appeal before the SHO at the October 28, 2019 hearing, however, as the C-12 appeal forms are not included in the record before us. When a record is silent, this court presumes regularity. *See State ex rel. Van Atta v. Indus. Comm.*, 10th Dist. No. 86AP-733 (Mar. 15, 1988) (noting that "[i]t must be presumed that the commission acted regularly when there is a silent record of an oral hearing"); *Cowans v. Ohio State Racing Comm.*, 10th Dist. No. 13AP-828, 2014-Ohio-1811, ¶ 39, quoting *Houser v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 10AP-116, 2011-Ohio-1593, ¶ 20, 21 (holding that " '[a]n appellate court must presume the regularity of

administrative proceedings' "). I cannot presume that it is regular for a claimant to appeal the allowance of a condition (lumbar sprain/strain in the instant case) and the award of TTD compensation based on that allowed condition. Rather, here the presumption of regularity would be that claimant appealed the disallowance of the two conditions of disc displacement and annular tear. Under these circumstances, the SHO's determinations in the November 2, 2019 and January 16, 2020 orders penalize claimant for pursuing an appeal on matters unrelated to the allowed condition and the award of TTD compensation based on the allowed condition, especially where the employer did not appeal the DHO's order and where the allowed condition and award of TTD compensation were ultimately affirmed. Had claimant not appealed the disallowance of the two claims, the DHO's order would have become final. *See State ex rel. Coastal Pet Prods., Inc. v. Indus. Comm.*, 10th Dist. No. 14AP-176, 2015-Ohio-502, ¶ 69 (explaining that the DHO's order "became a final commission order by virtue of [the claimant's] failure to exercise the administrative remedy of an appeal of the DHO's order"); *State ex rel. Honey Baked Ham of Ohio, Inc. v. Indus. Comm.*, 10th Dist. No. 03AP-503, 2004-Ohio-2496, ¶ 7. Had the DHO's order become final due to the employer's failure to appeal the order, pursuant to the commission's interpretation of *Russell*, subsequent termination of TTD compensation based on a disputed opinion of MMI would have an effective date of termination of the hearing date. The termination date of TTD compensation should be the SHO's hearing date under the circumstances of this case as well.

**VII. Conclusion**

{¶ 50} I respectfully dissent from the majority and would sustain claimant's objection to the magistrate's decision and decline to adopt the magistrate's decision as our own. I would grant the requested writ of mandamus.

_____

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Loretta Dillon, | : | |
| Relator, | : | |
| v. | : | No. 20AP-600 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

MAGISTRATE'S DECISION

Rendered on February 24, 2022

*Knisley Law Offices, Daniel S. Knisley,* and *Kurt A. Knisley,* for relator.

*Dave Yost,* Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 51} Relator, Loretta Dillon ("claimant"), has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders that declared an overpayment of $5,549.40 in temporary total disability ("TTD") compensation, and to issue an order dissolving the overpayment.

Findings of Fact:

{¶ 52} 1. On April 2, 2019, claimant sustained an industrial injury in the course of and arising out of her employment for respondent, Jefferson Industries Corporation

("employer"). Claimant was working in the welding department and injured her back while pushing carts containing parts.

{¶ 53} 2. Claimant received medical treatment at the emergency room within a couple hours of her injury. The emergency room doctor suggested follow-up care, and claimant continued to receive medical care over the next several days. She was subsequently released to return to light-duty work.

{¶ 54} 3. On April 8, 2019, claimant attempted to return to work but was only able to work less than two hours before back pain forced her to stop working, and she returned to the emergency room with lower-back pain.

{¶ 55} 4. On April 9, 2019, Adam Edge, D.C., began treating claimant and certified disability starting April 9 through April 25, 2019. Dr. Edge subsequently extended disability certification. Dr. Edge also subsequently executed a C-9 form, seeking to additionally allow intervertebral displacement at L2-3, L3-4, L5-S1 and sciatica.

{¶ 56} 5. On April 18, 2019, the Ohio Bureau of Workers Compensation ("BWC") issued an order allowing the claim for lumbar sprain and strain. The employer appealed, and a hearing was set for June 13, 2019.

{¶ 57} 6. Also on April 18, 2019, claimant filed a C-84 request for TTD compensation.

{¶ 58} 7. On June 18, 2019, after a hearing, a district hearing officer ("DHO") issued an order, in which the DHO: (1) allowed claimant's claim for lumbar sprain and strain; (2) ordered TTD compensation be paid for a closed period from April 3 through April 7, 2019, inclusive, and then from April 9 through May 9, 2019, to continue based upon the submission of supporting medical proof; (3) denied claimant's claim for lumbar disc displacements at L2-3, L3-4, L4-5, and L5-S1, and an annular tear at L4-5; and (4) found claimant had not yet reached MMI. Claimant appealed but began receiving TTD compensation pursuant to the DHO order.

{¶ 59} 8. On August 21, 2019, Gerald Steiman, M.D., issued a report based upon an examination of claimant performed on August 8, 2019, in which he found claimant had reached maximum medical improvement ("MMI") for the allowed condition of lumbar sprain/strain.

{¶ 60} 9. On October 28, 2019, a hearing was held before a staff hearing officer ("SHO"). On November 2, 2019, the SHO issued an order, in which he found the following: (1) the denial of the allowance for disc displacements L2-S1 and the annular tear is affirmed; (2) the allowance for lumbar sprain and strain is affirmed; (3) payment of TTD compensation is payable from April 3 through April 7, 2019, and then from April 9 up to and through August 8, 2019; (4) claimant reached MMI on August 8, 2019, the date Dr. Steiman performed his examination of claimant; and (5) TTD compensation is terminated on August 8, 2019, based upon MMI. Claimant appealed.

{¶ 61} 10. On November 4, 2019, the BWC issued an order declaring an overpayment of TTD compensation from August 9 through October 29, 2019, in the amount of $5,549.40, based upon the SHO's termination of TTD due to MMI. Claimant appealed.

{¶ 62} 11. On November 21, 2019, the commission refused further appeal of the SHO's November 2, 2019, order.

{¶ 63} 12. On December 12, 2019, the DHO issued an order, affirming the BWC's November 4, 2019, order of overpayment. Claimant appealed.

{¶ 64} 13. On December 19, 2019, claimant filed a notice of appeal and complaint pursuant to R.C. 4123.512, in the Madison County Court of Common Pleas regarding the denial of allowance for the disc displacement of L2-3, L3-4, L4-5, L5-S1, and the L4-5 annular tear. That case was still pending as of the time of briefing in the present case.

{¶ 65} 14. On January 16, 2020, the SHO affirmed the DHO's order, finding the following: (1) the overpayment assessed in the November 4, 2019, order is to remain as is; (2) the administrator properly assessed the overpayment of TTD compensation for the period from August 8 through October 29, 2019; (3) the SHO correctly terminated TTD compensation on August 8, 2019, based upon Dr. Steiman's examination of claimant performed on that date, instead of the date of the SHO hearing; and (4) the SHO was permitted to terminate TTD compensation in the manner he did based upon the evidence before him because the issue before him was allowance that included a request for an initial period of compensation. Claimant appealed.

{¶ 66} 15. On February 6, 2020, the commission refused the appeal.

{¶ 67} 16. On April 23, 2020, claimant filed a request for reconsideration from the commission's February 6, 2020, order.

{¶ 68} 17. On May 9, 2020, the commission denied the request for reconsideration.

{¶ 69} 18. On December 29, 2020, claimant filed a complaint for writ of mandamus, requesting that this court vacate the commission's orders that declared an overpayment in TTD compensation, and to issue an order dissolving the overpayment.

Conclusions of Law and Discussion:

{¶ 70} The magistrate recommends that this court deny claimant's complaint for writ of mandamus.

{¶ 71} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 72} Here, claimant challenges the commission's order affirming the assessed overpayment of TTD compensation and finding the SHO correctly terminated TTD compensation on August 8, 2019, the date she was deemed to have attained MMI, rather than the date of the DHO hearing. In making such arguments, claimant claims that the commission's order conflicts with *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516 (1998). In *Russell*, the Supreme Court of Ohio found:

> This court has unwaveringly held (1) that continuing TTD compensation may not be terminated prior to a hearing before a commission hearing officer so long as claimant's attending physician continues to certify TTD, (2) that the hearing officer may not terminate the claimant's TTD retroactive to a date prior to the date of the hearing, (3) that claimant is entitled to all compensation paid to the date of the hearing, and (4) that any eventual discounting of the attending physician's reports certifying TTD does not transform those payments into a recoupable overpayment. [Citations omitted.]

*Id*. at 519.

{¶ 73} Here, claimant contends that *Russell* requires that, as long as compensation was ordered paid by a prior order, and continuing certification was provided pursuant to that order, then ongoing compensation must remain authorized until terminated by a

finding of MMI at the time of the hearing. Claimant asserts that, under *Russell*, if these two conditions precedent are met, a claimant establishes entitlement to all payments at the time they were received, and a termination order does not negate the previous order pursuant to which compensation has been paid. Applying *Russell* to the present case, claimant argues that she remained entitled to payment of TTD compensation in accordance with the June 18, 2019, DHO order, and the commission had a clear legal duty to declare her MMI as of the date of the October 28, 2019, SHO hearing, rather than August 8, 2019, the date Dr. Steiman found her to have reached MMI. Claimant asserts that whether the finding of MMI in the instant case occurred during the initial allowance hearing or later upon motion from the employer or administrator, *Russell* does not draw any such distinction and requires only the two conditions precedent of (1) a prior order for ongoing TTD compensation, and (2) continued submission of proof of TTD, in order for the compensation to be terminated on the date of the hearing.

{¶ 74} Before addressing the merits of the employer's argument, the commission first contends that claimant may not seek mandamus because she failed to exhaust all of her administrative remedies, in that: (1) she untimely filed her motion for reconsideration two months after the commission's refusal order; and (2) she has an existing remedy available to her in the currently pending appeal under R.C. 4123.512 in the Madison County Court of Common Pleas, because if she is successful in that case in having the additional multilevel lumbar disc conditions added to the claim, the issue of entitlement to TTD beyond August 8, 2019, would return to the commission and possibly result in the vacation of the current overpayment.

{¶ 75} With regard to the first argument, that claimant failed to exhaust all of her administrative remedies because she untimely filed a motion for reconsideration, this court has held that there is no legal authority to support the contention that, in order to exhaust all administrative remedies, a party must file a request for reconsideration with the commission before filing a mandamus action, and this court specifically rejected this argument in *State ex rel. Novak v. Indus. Comm.*, 10th Dist. No. 92AP-1326 (Nov. 12, 1993). *See State ex rel. Lapp Roofing & Sheet Metal Co. v. Indus. Comm.*, 10th Dist. No. 05AP-950, 2007-Ohio-933, ¶ 10-11 (finding that claimant presents no legal authority, and the court is not aware of any, supporting its argument that a party to a claim must file a request

for reconsideration with the commission before filing a mandamus action, and this court rejected the same argument in *Novak*). In the present case, claimant exhausted her administrative remedies with the commission, and claimant was not required to seek reconsideration of an adverse decision before seeking relief in mandamus.

{¶ 76} With regard to the second argument, that claimant has an existing remedy available to her in the currently pending appeal under R.C. 4123.512 in Madison County, the magistrate finds this argument unpersuasive. Notwithstanding the commission's failure to cite any authority for this proposition, even if claimant were successful in having other conditions added based upon her right-to-participate action in the Madison County Court of Common Pleas, that action would determine only the right to participate, while the commission's determination of the right to TTD compensation for this period would remain intact. Thus, upon return to the commission after a successful appeal in the right-to-participate action, there would still exist a final determination by the commission denying claimant the right to TTD compensation for the same period, presenting the possibility that res judicata might be raised. Therefore, the commission's arguments, in these respects, are without merit.

{¶ 77} With regard to the merits of claimant's main argument concerning the application of *Russell*, the commission counters that it properly terminated TTD as of the date of Dr. Steiman's examination of claimant instead of the hearing date because this case involves an original request for payment of TTD and not an on-going payment based upon prior final orders of entitlement to TTD. The commission asserts that *Russell* was intended to be used in situations where entitlement to TTD has been established by final order, payment of TTD had been on-going, and either the BWC or the employer then took an action to stop that on-going payment. The commission contends that *Russell* does not apply to orders addressing the original allowance of a claim or to the original request for TTD.

{¶ 78} Claimant's argument, while possessing some appeal from a fairness standpoint, is unsupported by any authority. It is arguable that similar considerations that underpin the holding in *Russell* also apply to the circumstances in a case such as the one at bar. As this court explained in *State ex rel. Huntington Natl. Bank v. Vogt*, 10th Dist. No. 16AP-477, 2017-Ohio-2628, ¶ 43, with regard to the equities underlying *Russell*: "At the time of the hearing, should the commission find the evidence that the allowed conditions

have reached MMI persuasive, TTD compensation is terminated effective the date of that hearing. Were it otherwise, claimants would find themselves in the untenable position of having to pay back compensation which they believed they were rightfully entitled to, and which they have been using to pay their own expenses." It could be said that claimant here believed she was rightfully entitled to the TTD compensation that she had been paid continuously since the DHO order, and she was relying upon and using such compensation to pay her personal expenses. However, the distinguishing factor that undercuts claimant's fairness argument in this case, as opposed to the circumstances in *Russell*, is that the DHO's initial order of TTD was never final. Claimant appealed the DHO's order awarding TTD compensation, and the matter of TTD was still subject to revision by the SHO and commission on further appeal. Claimant here might have had an expectation that she was entitled to the compensation and she could spend the TTD payments as she received them, but the expectation was unfounded due to the lack of finality of the appealed DHO order.

{¶ 79} This court was clear in *Vogt* under what circumstances *Russell* applies. In *Vogt*, the employer, a self-insured employer, certified the injured employee's claim and voluntarily began paying compensation the day after the injury in December 2014. The employer did not dispute the employee's January 2015 C-84 requesting TTD compensation or his May 2015 claim for additional allowances; rather, the employer continued paying TTD compensation. In June 2015, at the request of the employer, the employee underwent an independent medical examination ("IME"). The IME doctor subsequently found the employee's allowed conditions had reached MMI, and the additional conditions should not be allowed. The employer filed a motion to terminate TTD compensation in July 2015. In September 2015, a DHO disallowed any additional conditions and terminated TTD compensation, effective the date of the DHO hearing. The employer argued that TTD payments should be terminated retroactive to January 2015, when the employee's doctor found his injury had healed. The DHO rejected the employer's argument as being inconsistent with *Russell*, and the commission lacked jurisdiction to address the merits of the retroactive termination of TTD benefits because no motion had been filed requesting the commission to exercise its continuing jurisdiction on this issue. On appeal by both parties, an SHO vacated the DHO's order, disallowed the claim for an additional allowance and terminated her TTD compensation effective the date of the hearing. The SHO noted

that Huntington had continued to pay TTD compensation, and further, Huntington's motion to terminate the ongoing TTD compensation had been referred to the commission.

{¶ 80} Upon a writ of mandamus action filed by the employer in this court, the magistrate denied the writ. The magistrate explained the holding in *Russell*:

> Once the payment of TTD compensation has begun and a claimant's entitlement to that compensation has been established, TTD compensation may not be terminated without proper notice and a hearing. In *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516, 696 N.E.2d 1069 (1998), the Supreme Court of Ohio determined that, the termination date for an award of TTD compensation is the date of the hearing and not the date of a doctor's report opining that a claimant's allowed conditions have reached MMI. The reason for this is simple.
>
> Claimants present medical evidence that, due to the allowed conditions in their claim, they are unable to return to their former position of employment. Once the commission finds the claimant's evidence to be persuasive, TTD compensation is awarded and paid while the claimant's treating physician continues to submit medical documentation of ongoing disability. Often an employer will have a claimant examined by another physician to determine whether or not the allowed conditions in the claim have reached MMI. If a physician opines that they have, the employer files a motion to terminate the compensation, and the matter is set before the commission for a hearing since there is conflicting medical evidence in the record. At the time of the hearing, should the commission find the evidence that the allowed conditions have reached MMI persuasive, TTD compensation is terminated effective the date of that hearing. Were it otherwise, claimants would find themselves in the untenable position of having to pay back compensation which they believed they were rightfully entitled to, and which they have been using to pay their own expenses.

*Id.* at ¶ 42-43.

{¶ 81} The magistrate then went on to apply *Russell* to the circumstances before it:

> In the present case, relator began paying claimant TTD compensation without an order from the commission ordering such payment. Relator, a self-insured employer, voluntarily paid compensation to claimant without requiring the claimant to file a motion with the commission. This in no

way changes the fact that claimant was entitled to the TTD compensation and was being paid that compensation by relator. Claimant's medical evidence of continuing disability was submitted to relator's third-party administrator and benefits continued to be paid. It was not until June 2015 that relator had claimant examined by another physician who found that the allowed condition had reached MMI. Relator cannot use this report or a statement in an office note by relator's treating physician dated January 5, 2015 indicating that her head laceration was healed to change the well-settled law. Inasmuch as there is no allegation of fraud on the part of the claimant, to the extent that relator now wishes it would have paid more attention or had claimant examined before June 2015, the commission did not abuse its discretion by applying the law from Russell and terminating claimant's TTD compensation effective September 17, 2015, the date of the hearing before the DHO.

*Id*. at ¶ 44.

{¶ 82} Upon objections, a panel of this court affirmed the magistrate's reasoning that "once the payment of TTD compensation has begun and a claimant's entitlement to that compensation has been established, TTD compensation may not be terminated without proper notice and a hearing[,] and [t]he termination date for an award of TTD compensation is the date of the hearing." *Id*. at ¶ 15. The court agreed that *Russell* applied because "[the employee's] entitlement to TTD compensation had been established and [the employer] voluntarily paid the TTD benefits on an ongoing basis without the commission ordering such payment." *Id*. at ¶ 16. The court rejected the employer's argument that *Russell* is limited to situations where there is conflicting medical evidence concerning whether a claimant has reached MMI and not where there is a lack of sufficient proof submitted by the employee in support of payment of TTD. The court in *Vogt* concluded that the validity of TTD compensation was already established in the case before it, and to re-examine it would require the commission to exercise continuing jurisdiction, which was never sought.

{¶ 83} Therefore, as this court made apparent in *Vogt*, *Russell* applies when "entitlement" to TTD compensation has been "established." In *Vogt*, TTD compensation was "established" because the employer did not dispute the request for TTD and voluntarily paid it, although entitlement is commonly established by commission order pursuant to a

motion by the employee. This court explained in *Vogt* that entitlement to TTD compensation may be established by both methods. Furthermore, the employer in *Vogt* had to file a motion to terminate the TTD compensation based upon MMI. Also, because TTD was already established, the only way the employer could retroactively terminate TTD prior to the date of the hearing was to file a request for the commission to exercise its continuing jurisdiction.

{¶ 84} To the contrary, in the present case, claimant's "entitlement" to TTD compensation had not been "established." Although payment of TTD compensation had begun pursuant to the DHO's order, claimant appealed the order, and no final entitlement to TTD was established until the SHO issued its order and further appeals were exhausted. Telling is that there is no motion from the employer in this case requesting termination of TTD compensation via the exercise of continuing jurisdiction; rather, the issue was addressed at the SHO level as part of the ongoing appeal of the initial TTD determination. Because the validity of entitlement to TTD compensation had never before been established until the SHO hearing, claimant could have no expectation of finality of the TTD determination, and the commission properly terminated TTD compensation retroactive to the date claimant reached MMI, rather than the date of the hearing. As such, the BWC, and subsequently, the commission, properly assessed an overpayment of TTD compensation from the date of the MMI determination on August 8, 2019.

{¶ 85} Accordingly, it is the magistrate's decision that this court should deny claimant's complaint for writ of mandamus.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).